

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 09, 2019.**

_____
**H. CHRISTOPHER MOTT
UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: § | | |
| FFBC OPERATIONS, LLC, § | | Case No. 19-10869-hcm |
|     d/b/a Celis Brewery § | | |
| *and* § | | |
| FFBC REAL ESTATE, LLC § | | Case No. 19-10870-hcm |
| § | | (*Jointly Administered Under* |
| Jointly Administered Debtors. § | | *Case No. 19-10869-hcm*) |

### AGREED INTERIM ORDER AUTHORIZING
### THE DEBTORS' USE OF CASH COLLATERAL

Upon consideration of the Motion for Entry of Interim and Final Orders Authorizing the Debtors' Use of Cash Collateral (the "Motion") filed by FFBC Real Estate, LLC and FFBC Operations, LLC (collectively, the "Debtors"), and agreed to by Amplify Credit Union, formerly known as Amplify Federal Credit Union ("Amplify"), the U.S. Small Business Administration ("SBA") and Celis Phoenix, LLC ("CP," and together with Amplify and the SBA, the "Lenders"), pursuant to which the Debtors seek authority to use cash collateral that is subject to the liens and security interests held by Lenders, and Lenders consent to such usage, a hearing to consider interim relief under the Motion having been held on July 3, 2019, the Court having

**Exhibit A**

considered the Motion, and the representations of counsel regarding the relief sought therein; and the Court having recognized that the parties hereto stipulate and agree as follows, and the Court hereby adopting said stipulation and agreement as findings of fact and conclusions of law as set forth below, subject to the limitations set forth herein, if any, and after due deliberation and sufficient cause appearing therefore,

THE COURT FINDS AND CONCLUDES THAT:

A. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C. Venue of this case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D. Under the circumstances, due and adequate notice has been given to all parties entitled thereto, and no other or further notice is necessary or required.

E. The relief requested in the Motion is necessary and in the best interests of the Debtors' estate and creditors.

F. Lenders are the primary secured creditors to the Debtors, and the specifics of the secured loans are as follows:

    a. **Real Estate First Lien Note**. The Debtors entered into a Loan Agreement dated March 14, 2016 with Amplify that allowed the Debtors to borrow up to Five Million Three Hundred Thousand and no/100 Dollars ($5,300,000.00) principal amount under the Real Estate First Lien Note dated March 14, 2016 (the "Amplify Loan"), which is secured by both the real and personal property of the Debtors. As of June 28, 2019, Amplify asserts that the outstanding principal amount under the Amplify Loan, including all of the accrued and unpaid interest is $5,085,726.60. Amplify reserves the right to include any additional fees, expenses, and post-petition interest. The liens and security interests under the Amplify Loan were granted

under the Security Agreement (Commercial) dated March 14, 2016, and Amplify asserts that the personal property interests were duly perfected pursuant to a Uniform Commercial Code ("UCC") Financing Statement filed with the Texas Secretary of State as filing number 16-0010051559, dated March 29, 2016, and the lien granted under the real property in the Deed of Trust (with Security Agreement) was recorded on March 18, 2016 in the real property records of Travis County, Texas as document number 2016040362. Also, this loan is subject to the Third Party Lender Agreement entered into between Amplify Federal Credit Union and Capital Certified Development Corporation dated September 6, 2017.

      **b.** **The SBA Loan**. The Debtors entered into a Loan Authorization Agreement dated March 10, 2016, with Capital Certified Development Company and the United States Small Business Administration that allowed the Debtors to borrow up to Three Million Three Hundred Twenty-Eight Thousand and no/100 Dollars ($3,328,000.00) under the Small Business Administration Note (the "SBA Loan") executed September 5, 2017. The SBA asserts that the outstanding principal balance of the SBA Loan, including all of the accrued and unpaid interest is $3,106,280.58, with per diem interest of $243.11. The liens and security interests under the SBA Loan were granted under the Security Agreement dated September 5, 2017, and the SBA asserts that the personal property interests were duly perfected pursuant to a UCC Financing Statement filed with the Texas Secretary of State as filing number 17-00303755369, dated September 7, 2017, the lien granted under the real property in the Deed of Trust, Security Agreement, Assignment of Rents and Financing Statement was recorded on September 27, 2017 in the real property records of Travis County, Texas as document number 2017155145, and the Transfer of Lien from CDC to SBA recorded on September 27, 2017 in the real property records of Travis County, Texas as document number 2017155149. Also, this loan is subject to the Third

{036180-94904/4838-9513-5899.2}        3

**Exhibit A**

Party Lender Agreement entered into between Amplify Federal Credit Union and Capital Certified Development Corporation dated September 6, 2017.

      c.    **The CP Loan**. CP and FFBC Operations LLC entered in to a Secured Promissory Note dated March 29, 2019 by which CP made available a line of credit in the amount of $400,000 to Debtor. The Secured Promissory Note was secured by a Security Agreement by which Debtor granted to CP a lien on certain specific "open orders', inventory and the proceeds of such open orders. CP asserts that the liens were perfected by the filing of a UCC Financing Statement with the Texas Secretary of State. CP asserts that the Secured Promissory Note has an outstanding balance of $348,116.40. CP and Amplify executed a Subordination Agreement by which Amplify subordinated its prior liens to the liens of CP with respect to the specific collateral.

    G.    The SBA and Amplify assert that all of Debtors' assets are pledged as collateral under the Amplify Loan and the SBA Loan ("Pre-Petition Collateral"), which includes all cash and cash equivalents of the Debtors' bankruptcy estate in existence as of the Petition Date and that is acquired by the Debtors thereafter ("Cash Collateral") within the meaning of section 363(a) of the Bankruptcy Code. The Amplify Loan and the SBA Loan are collectively referred to herein as the "Pre-Petition Obligations."

    H.    The Debtors require use of Cash Collateral in order to continue their ordinary course business operations and to maintain the value of their bankruptcy estates, and the Lenders consent to the Debtors' use of the Cash Collateral in accordance with the terms of this Interim Order. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b). Approval for the Debtors' use of Cash Collateral as provided herein is necessary to avoid immediate and irreparable harm to the Debtors' bankruptcy estates. This

**Exhibit A**

Interim Order permits the Debtors to use the Cash Collateral, on an interim basis, on the terms and conditions provided for herein, commencing on the Petition Date and expiring on August 5, 2019 (the "Interim Period"), and the same may be extended from time to time as provided herein.

I. The Debtors' required use of the Cash Collateral includes helping fund operations for the continued production of inventory and the sale of inventory.

J. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The Debtors' use of the Cash Collateral in the Interim Period is necessary to preserve their bankruptcy estates, and to avoid immediate and irreparable harm to the Debtors, their bankruptcy estates and assets.

K. Based upon the foregoing findings and conclusions, upon the Motion and other pleadings filed in this Chapter 11 case and upon the record made before this Court, and good and sufficient cause having been shown for the entry of this Interim Order.

**IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is granted on an interim basis as set forth herein. Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein are hereby denied and overruled, except as provided herein.

2. Subject to the terms and conditions set forth herein, the Debtors are hereby authorized to use the Cash Collateral to pay the Debtors' actual expenses of operating the business as indicated in the budget attached hereto as **Exhibit A** (the "Budget") for the Interim Period and for the purposes identified in the Budget. The expenditures authorized in the Budget shall be generally adhered to (plus or minus five percent (5%)), but any amounts listed in the Budget that are unused in any week may be carried over and used by the Debtors in any

**Exhibit A**

subsequent week. Each line item of expense may be exceeded by up to 10%, so long as the total budget does not exceed 5% in the aggregate without the written agreement of the Lenders.

3. The Debtors and Lenders may extend the Interim Period, without further notice to creditors or order of this Court, provided that a Stipulation Extending Cash Collateral Order is signed by counsel to the Debtors and counsel to Lenders and is filed together with a copy of a budget (if there are changes from the Budget attached hereto as **Exhibit A**) and served on any Creditors' Committee, the Debtors' 20 largest unsecured creditors, The Office of the United States Trustee, and any party filing a notice of appearance in the case (the "Notice Parties"). The Debtors shall also be authorized to make expenditures during the Interim Period which are not contained in the Budget or which exceed the figures in the Budget without further notice to creditors or order of this Court provided that the Debtors first obtain Lenders' prior written consent to the making of any such expenditures. Notice of expenditures will be provided to the Notice Parties, with an opportunity to object, if the expenditures are over $50,000.00.

### Adequate Protection to Lenders

4. Lenders are entitled, pursuant to section 361, 362, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Pre-Petition Collateral on account of the Debtors' use of the Pre-Petition Collateral, the Debtors' post-petition use of the Cash Collateral, and any diminution in the value of any of the Debtors' Pre-Petition Collateral or Cash Collateral, for any reason, arising out of the Debtors' use, sales, depletion or disposition of the Pre-Petition Collateral (each such diminution is "Diminution in Value").

5. As adequate protection to Lenders for the aggregate Diminution in Value, Lenders shall be and hereby are granted (effective upon the Petition Date and without the necessity of the

Exhibit A

execution or filing by the Debtors or Lenders of security agreements, pledge agreements, financing statement, or otherwise), the following:

(a) <u>Adequate Protection Liens</u>. To the extent of any Diminution of Value, and in the order of their existing lien priorities, Lenders shall have valid and perfected additional and first-priority replacement security interests in and liens upon (the "Adequate Protection Liens") all of the Debtors' right, title and interest in, to, and under (a) all of the Post-Petition Collateral (to the extent that Lenders hold a properly perfected lien on such Pre-Petition Collateral); (b) all of the Debtors' now owned and after-acquired real and personal property, assets and rights, of any kind or nature, wherever located, including, without limitation, contracts, property, plant, equipment, general intangibles, documents, instruments, interests in leaseholds, patents, copyrights, trademarks, trade names, and all other intellectual property, capital stock of subsidiaries, cash, cash equivalents, and Cash Collateral of the Debtors, any investment of such cash and Cash Collateral, inventory, accounts receivable, any cause of action (excluding avoidance or other actions arising under chapter 5 of the Bankruptcy Code), and the proceeds thereof (whether recovered by judgment, settlement or otherwise, but not including causes of action brought against Lenders), and right to payment whether arising before or after the Petition Date, and the proceeds, products, offspring, rents and profits of all the foregoing (collectively, the "Adequate Protection Collateral"). Notwithstanding anything to the contrary, the Adequate Protection Collateral shall not include any assets of the Debtor that were unencumbered on the filing date or categories of assets in which the Lenders did not hold pre-petition perfected liens or security interests, and nothing herein shall be construed to grant any Lender a priming lien against any assets of the Debtors. Lenders shall not be required to file or serve UCC financing statements, notices of lien or similar instruments which otherwise may be required under federal

**Exhibit A**

or state law in any jurisdiction, or take any other action, including taking possession, to validate and perfect any such Adequate Protection Liens; and the failure by the Debtors to execute or file any documentation relating to the Adequate Protection Liens shall in no way affect the validity, perfection or priority of such Adequate Protection Liens. If, however, Lenders, in their sole discretion, determine to file any such UCC financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Adequate Protection Liens to the extent provided in this Interim Order, the Debtors are directed to reasonably cooperate with and assist Lenders in doing so, and the stay that is imposed by section 362(a) of the Bankruptcy Code is hereby modified to allow the filing and recording in any jurisdiction of a certified copy of this Interim Order, UCC financing statements, notices of lien or similar instruments and all such documents shall be deemed to have been filed or recorded as of the Petition Date.

(b) <u>Superpriority Claims</u>. To the extent the adequate protection provided by the Adequate Protection Liens is insufficient to protect Lenders against any Diminution of Value, Lenders shall have an allowed superpriority administrative expense claim as provided and to the full extent allowed by section 503(b) and 507(a)(2) & (b) of the Bankruptcy Code and otherwise (the "Superpriority Claims").

6. <u>Carve-Out</u>. The Adequate Protection Liens and Superpriority Claims granted in this Interim Order to the Lenders are subject only to, and only to the extent the Debtors do not have unencumbered cash to pay, the unpaid fees pursuant to 28 U.S.C. § 1930 and any fees payable to the Clerk of the Court. Subject to the availability of funds and the approval of the Bankruptcy Court and the amounts identified in the Budget (not to exceed the Carve-Out), the Debtors will be permitted to pay such allowed fees and expenses.

**Exhibit A**

7. Debtors, the Creditors' Committee, United States Trustee or any creditor may file a Complaint or otherwise file an objection to the Pre-Petition Obligations and the liens. Any such Complaint or objection must be filed with the Court and served on the Lender by no later than August 30, 2019. In the absence of such timely Complaint or objection, such Pre-Petition Obligations will be fully and finally deemed and found by the Court to be valid, and the liens on the Pre-Petition Collateral will be fully and finally deemed and found by the Court to be valid and perfected for all purposes.

### Other Provisions

8. Successors. The provisions in this Interim Order shall be binding upon and shall inure to the benefit of Lenders and the Debtors and the Debtors' respective successors and assigns (including, without limitation, any Chapter 11 or Chapter 7 trustee or other fiduciary hereafter appointed for the Debtors or with respect to the Debtors' property).

9. Survival. Unless and until all of the Pre-Petition Obligations have been indefeasibly repaid in full, in cash, (i) the protections afforded to Lenders under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order dismissing the Debtors' Chapter 11 case, converting the Debtors' Chapter 11 case into a case pursuant to Chapter 7 of the Bankruptcy Code, or confirming any plan of reorganization in the Debtors' Chapter 11 case, and (ii) the Adequate Protection Liens and the Superpriority Claims shall maintain their priority as provided by this Interim Order. In the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, Lenders shall be entitled to all of the rights, remedies, privileges and benefits, including the Adequate Protection Liens and priorities granted herein, with respect to all of Lenders' claims (including the Superpriority Claims), up and until that time.

**Exhibit A**

10. <u>Effect of Entry of this Order</u>. Entry of this Order shall be without prejudice to any and all rights, remedies, claims and causes of action which Lenders may have against the Debtors or third parties, and without prejudice to the right of Lenders to seek relief from the automatic stay in effect pursuant to section 362 of the Bankruptcy Code, or any other relief in this Chapter 11 case.

11. <u>Immediate Effect</u>. Pursuant to Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

12. <u>Additional Financial Information</u>. Within fifteen (15) days of the end period of month the Debtors will provide Lenders and the United States Trustee a line item comparison from the budgeted items on Exhibit A to the Debtors' actual results for that month. Such report shall not excuse Debtors' requirement to file monthly operating reports. Upon request by either Lender, the Debtors will also provide the Bank Statements and account receivable aging report for that month.

13. <u>Underlined Headings</u>. The headings used within this Interim Order are for the convenience of reference only, do not constitute a part hereof, and shall not affect the meaning or construction of any provision hereof.

14. <u>Continuing Jurisdiction</u>. This Court hereby expressly retains the jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Order and to adjudicate any and all disputes in connection therewith.

**Final Hearing**

15. Pursuant to Bankruptcy Rule 4001, the final hearing (the "Final Hearing") on the Motion shall be held and is hereby scheduled for August 5, 2019, at 10:00 a.m. before this Court.

**Exhibit A**

By no later than July 30, 2019, Debtors shall file a proposed final cash collateral order and budget. Objections to the requested relief shall be filed with the Court no later than August 2, 2019, and served upon (i) the Debtors; (ii) the Debtors' counsel; (iii) the United States Trustee; (iv) the Lenders; (v) Lenders' counsel; (vi) all other secured creditors of the Debtors; and (vii) any other party that has filed a notice of appearance in this Chapter 11 case. The Debtors shall promptly mail copies of this Interim Order to each of the parties receiving notice of the Motion, as well as any other entity known to the Debtors that might have an interest in the Pre-Petition Collateral and any other party that has filed and served a special request for notice with this Court.

###

**AGREED AS TO FORM AND SUBSTANCE:**

By: */s/ Eric J. Taube*
Eric J. Taube
State Bar No. 19679350
Waller Lansden Dortch & Davis, LLP
100 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 685-6401 (telephone)
(512) 685-6417 (facsimile)
eric.taube@wallerlaw.com

**PROPOSED ATTORNEYS FOR DEBTORS AND DEBTORS-IN-POSSESSION**

By: */s/ Sabrina L. Streusand*
Sabrina L. Streusand
State Bar No. 11701700
Streusand, Landon, Ozburn & Lemmon, LLP
1801 S. MoPac Expressway, Suite 320
Austin, Texas 78746
(512) 236-9901 (telephone)
(512) 236-9904 (facsimile)
streusand@slollp.com

**COUNSEL FOR AMPLIFY CREDIT UNION**

By: */s/ Charlie Shelton*
Ranjan "Ron" Satija
State Bar No. 24039158
Herbert C. "Charlie" Shelton II
State Bar No. 24079317
Hajjar Peters, LLP
3144 Bee Caves Road
Austin, Texas 78746
(512) 637-4956 (telephone)
(512) 637-4958 (facsimile)
rsatija@legalstrategy.com
cshelton@legalstrategy.com

**COUNSEL FOR CELIS PHOENIX, LLC**

**By**: */s/ Stephen Bass*
Stephen Bass
FL State Bar No. 24041991
Austin District Office
903 San Jacinto, Suite 334
Austin, Texas 78701
512 916 5858 (telephone)
512 916 5854 (fax)
Steven.Bass@usdoj.gov

{036180-94904/4838-9513-5899.2} 12

**Exhibit A**

# **EXHIBIT A**

## **Budget**

Exhibit A

**FFBC Operations and Real Estate**
**Cash Forecast**

| Week Ending ---------------------> | 14-Jul-19 | 21-Jul-19 | 28-Jul-19 | 4-Aug-19 |
|---|---|---|---|---|
| Week | 2 | 3 | 4 | 5 |
| **Cash Receipts** | $ 18,667 | $ 36,889 | $ 36,889 | $ 36,889 |
| **COGS** | $ 25,824 | $ 25,424 | $ 40,710 | $ 25,824 |
| CO2 | $ 1,038 | $ 1,038 | $ 1,038 | $ 1,038 |
| Labor | $ 8,008 | $ 8,008 | $ 8,008 | $ 8,008 |
| Raw Materials | $ 14,646 | $ 14,646 | $ 14,646 | $ 14,646 |
| Royalties | $ 731 | $ 731 | $ 731 | $ 731 |
| Excise and other Taxes | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 |
| Utilities | $ 400 | $ - | $ 15,286 | $ 400 |
| Water | 0 | 0 | $ 5,110 | 0 |
| Electric | 0 | 0 | $ 8,132 | 0 |
| Gas | 0 | 0 | $ 2,044 | 0 |
| Trash | $ 400.00 | | | $ 400.00 |
| Other | $ - | $ - | $ - | $ - |
| **Gross Margin** | $ (7,157) | $ 11,466 | $ (3,820) | $ 11,066 |
| **Op Ex Cash Disbursements** | $ 8,457 | $ 18,296 | $ 3,496 | $ 33,338 |
| **Payroll/Recruiting** | $ - | $ 15,000 | $ - | $ 15,000 |
| G&A Payroll | 0 | $ 15,000 | 0 | $ 15,000 |
| **Professional Services** | $ - | $ - | $ - | $ 1,500.00 |
| Accounting | 0 | 0 | 0 | $ 1,500.00 |
| IT | 0 | 0 | 0 | $ - |
| **G&A** | $ 8,457 | $ 3,296 | $ 3,496 | $ 14,838 |
| IT and Software costs | $ 1,667 | 0 | 0 | $ 1,667 |
| Office Supplies | 0 | 0 | 0 | $ 2,000 |
| Bank Charges | 0 | 0 | 200 | $ - |
| Internet/Phone | $ 750 | 0 | 0 | $ 750 |
| Dues/Licenses | 0 | 0 | 0 | $ 1,667 |
| Insurance - P&C; Umbrella; Auto | 2744 | 0 | 0 | $ - |
| Postage & Delivery | 0 | 0 | 0 | $ 208 |
| Charity | 0 | 0 | 0 | $ - |
| Misc | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 |
| Travel | 0 | 0 | 0 | $ 1,667 |
| Entertainment | 0 | 0 | 0 | $ 833 |
| Building Maintenance | 0 | 0 | 0 | $ 1,000 |
| Machine Maintenance | 0 | 0 | 0 | $ 1,500 |
| Critial Vendors Settlement | 0 | 0 | 0 | $ - |
| Training | 0 | 0 | 0 | $ - |
| Security | 0 | 0 | 0 | $ 250 |
| Equipment Rental | $ 346 | $ 346 | $ 346 | $ 346 |
| Spare Parts | $ 288 | $ 288 | $ 288 | $ 288 |
| Brewery Supplies | $ 346 | $ 346 | $ 346 | $ 346 |
| Lab Supplies | $ 692 | $ 692 | $ 692 | $ 692 |
| Chemicals | $ 346 | $ 346 | $ 346 | $ 346 |
| Cleaning | $ 277 | $ 277 | $ 277 | $ 277 |
| **Marketing** | $ - | $ - | $ - | $ 2,000 |
| Advertising (Tap Room) | 0 | 0 | 0 | $ 2,000 |
| Marketing - Other | $ - | $ - | $ - | $ - |
| **Property Taxes** | $ - | $ - | $ - | $ - |
| Property Taxes | $ - | $ - | $ - | $ - |
| **Bankruptcy / Legal Costs** | $ - | $ - | $ - | $ - |
| Utility Deposits (Frost A/C) | $ - | $ - | $ - | $ - |
| US Trustee Fees | $ - | $ - | $ - | $ - |
| Legal Counsel (Waller) | $ - | $ - | $ - | $ - |
| Christine Celis Counsel | $ - | $ - | $ - | $ - |
| Special Counsel | $ - | $ - | $ - | $ - |
| Financial Advisor (Harney) | $ - | $ - | $ - | $ - |
| **Net Cash Flow From Operations** | $ (15,614) | $ (6,831) | $ (7,316) | $ (22,272) |

**Exhibit A**