THE PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF REORGANIZATION DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANY WAY BE CONSIDERED AS A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIEF UPON FOR ANY PURPOSE BEFORE A CONDITION DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| FFBC OPERATIONS, LLC, | § | Case No. 19-10869-hcm |
|    d/b/a Celis Brewery | § | |
| *and* | § | |
| | § | |
| FFBC REAL ESTATE, LLC | § | Case No. 19-10870-hcm |
| | § | (*Jointly Administered Under* |
|    Jointly Administered Debtors. | § | *Case No. 19-10869-hcm*) |

## DEBTORS' PROPOSED DISCLOSURE STATEMENT
## FOR DEBTORS' JOINT PLAN OF REORGANIZATION

Dated: September 27, 2019

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
WALLER, LANSDEN DORTCH & DAVIS, LLP
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (FAX)

**ATTORNEYS FOR
FFBC OPERATIONS, LLC AND
FFBC REAL ESTATE, LLC**

# TABLE OF CONTENTS

ARTICLE 1. INTRODUCTION ...................................................................................1

    1.02    Purpose of Disclosure Statement ...................................................1
    1.03    Plan Balloting and Confirmation Procedures ......................................3
    1.04    Holder of Claims and Interests Entitled to Vote.....................................3
    1.05    Voting Procedures ..................................................................3
    1.06    Voting Requirements for Class Acceptance of the Plan.....................3
    1.07    Confirmation Hearing ...............................................................4

ARTICLE 2. DEBTOR'S BACKGROUND AND FINANCIAL PICTURE................6

    2.01    General..............................................................................6

ARTICLE 3. SELECTED FINANCIAL INFORMATION, PROJECTIONS AND
VALUATION ANALYSIS .....................................................................................7

    3.01    General..............................................................................7
    3.02    Operating Performance...............................................................7
    3.03    Financial Projections of the Reorganized Debtor ...............................8
    3.04    Valuation and Description of Debtor's Assets ...................................8

ARTICLE 4. PROCEEDINGS IN THE CHAPTER 11 CASE .................................8

    4.01    Commencement and Administration of the Case .................................8

ARTICLE 5. SUMMARY OF THE DEBTOR'S PLAN.........................................9

    5.01    Explanation of Chapter 11 ..........................................................9
    5.02    Terms of the Plan Control............................................................9
    5.03    Classification and Treatment .......................................................9
    5.04    Payments to U.S. Trustee...........................................................12

ARTICLE 6. IMPLEMENTATION OF PLAN .....................................................13

    6.01    Summary of Implementation of the Plan..........................................13
    6.02    The Reorganized Debtors' Obligations Under the Plan ......................13
    6.03    Management of Debtors: ............................................................14
    6.04    Exemption from Transfer Taxes ...................................................14
    6.05    Claims Objections...................................................................14
    6.06    Contingent Claims ..................................................................15
    6.07    Distributions on Allowance or Disallowance of Disputed Claims....................15
    6.08    Undeliverable/Returned Distributions...............................................15
    6.09    De Minimis Distributions ...........................................................15
    6.10    Additional Charges .................................................................15
    6.11    Treatment of Executory Contracts and Unexpired Leases ...................16
    6.12    Pending Claims and Causes of Action.............................................17

ARTICLE 7. CONFIRMATION OF THE PLAN ........................................................19

    7.01     Feasibility ...........................................................................19
    7.02     Best Interests Test.............................................................19

ARTICLE 8. ALTERNATIVES TO THE PLAN ......................................................20

    8.01     General.............................................................................20
    8.02     Alternative Plans................................................................20
    8.03     Liquidation Under Chapter 7 or Dismissal ...........................20

ARTICLE 9. RISK FACTORS ............................................................................20

    9.01     Uncertainty in the Financial Projections and Plan Default................21

ARTICLE 10. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ......21

    10.01    Income Tax Consequences ..................................................21

ARTICLE 11. JURISDICTION OF THE COURT ....................................................21

    11.01    General Retention of Jurisdiction .........................................21
    11.02    Specific Purposes...............................................................22

ARTICLE 12. MISCELLANEOUS ......................................................................24

    12.01    Amendment or Modification of the Plan..................................24
    12.02    Modification of Loan and Collateral Documents .....................24
    12.03    Effective Date and Final Decree...........................................24

ARTICLE 13. REQUEST FOR APPROVAL AND ACCEPTANCE OF PLAN ........................24

## IMPORTANT NOTICE

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT INCLUDES FORWARD-LOOKING STATEMENTS BASED LARGELY ON THE CURRENT EXPECTATIONS OF THE DEBTORS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AFFECTING THE FINANCIAL CONDITION OF THE DEBTORS OR THE REORGANIZED DEBTORS' BUSINESS. THE WORDS "BELIEVE," "MAY," "WILL," "ESTIMATE," "CONTINUE," "ANTICIPATE," "INTEND," "EXPECT" AND SIMILAR EXPRESSIONS IDENTIFY THESE FORWARD-LOOKING STATEMENTS. THESE FORWARD-LOOKING STATEMENTS ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS, INCLUDING THOSE DESCRIBED BELOW UNDER THE CAPTION "RISK FACTORS." IN LIGHT OF THESE RISKS AND UNCERTAINTIES, THE FORWARD LOOKING EVENTS AND CIRCUMSTANCES DISCUSSED IN THIS DISCLOSURE STATEMENT MAY NOT OCCUR AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS. NEITHER THE DEBTORS NOR THE REORGANIZED DEBTORS UNDERTAKE ANY OBLIGATIONS TO UPDATE OR REVISE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS OR OTHERWISE.**

**NO REPRESENTATIONS OR OTHER STATEMENTS CONCERNING THE DEBTORS (PARTICULARLY AS TO THEIR FUTURE BUSINESS OPERATIONS OR THE VALUE OF THEIR ASSETS) ARE AUTHORIZED BY THE DEBTORS, OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE, WHICH ARE OTHER THAN AS SET FORTH IN THIS STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISIONS. ANY SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS WHO SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT, WHICH MAY TAKE SUCH ACTION AS IT DEEMS APPROPRIATE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN INDEPENDENTLY AUDITED, EXCEPT AS SPECIFICALLY REFERENCED HEREIN. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTORS AND THEIR INTERNAL ACCOUNTING STAFF AND FINANCIAL ADVISORS, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES. THE DEBTORS' JOINT PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR IS URGED TO REVIEW THE PLAN IN ITS ENTIRETY PRIOR TO VOTING ON IT.**

THE DEBTORS MAKE NO REPRESENTATIONS WITH RESPECT TO THE EFFECTS OF TAXATION (STATE OR FEDERAL) ON THE INTEREST HOLDERS OR CREDITORS WITH RESPECT TO THE TREATMENT OF THEIR CLAIMS OR INTERESTS UNDER THE PLAN, AND NO SUCH REPRESENTATIONS ARE AUTHORIZED BY THE DEBTORS. CREDITORS AND INTEREST HOLDERS ARE ENCOURAGED TO SEEK THE ADVICE OF THEIR OWN PROFESSIONAL ADVISORS IF THEY HAVE ANY SUCH QUESTIONS.

## ARTICLE 1. **INTRODUCTION**

This Proposed Disclosure Statement is submitted by FFBC Operations, LLC and FFBC Real Estate, LLC (the "Debtors"), the chapter 11 debtors-in-possession in the above-captioned Cases, in connection with the Debtors' efforts to solicit votes necessary to confirm the Debtors' Joint Plan of Reorganization (the "Plan"). A copy of the Plan is included with the materials supplied in the packet you have received.

## **PLAN OVERVIEW**

This Plan contemplates a recapitalization of the two Debtors into a single LLC to be owned by Celis Phoenix, LLC ("CP") in return for a contribution and commitment of additional capital and the conversion of its post-petition loan to equity. Secured debt will be valued, restructured and recast, administrative claims will be paid, unsecured creditors will be paid by a combination of collection of claims and a cash contribution by CP and existing equity will be eliminated and be reissued to CP.

To the extent disputes regarding the value of secured claims are asserted, the Court will make a determination of value under 11 U.S.C § 506.

### 1.01 **Filing of the Debtor's Chapter 11 Case**

On July 1, 2019, each of the Debtors filed for relief under Chapter 11 of the United States Bankruptcy Code (the "Petition Date" or the "Filing Date"), Debtors filed a voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division ("Court" or "Bankruptcy Court"). The Debtors continues to manage its affairs as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108. This Disclosure Statement and the accompanying Plan are filed on behalf of the Debtors. The Debtors filed Chapter 11 relief in order to prevent the foreclosure sale of their respective assets by Amplify Credit Union ("Amplify") which was scheduled for the July 2, 2019 and to utilize the bankruptcy protections to improve operating performance and address creditor claims.

### 1.02 **Purpose of Disclosure Statement**

The purpose of this Disclosure Statement is to provide you, as the holder of a Claim against the Debtors, with information to enable you to make a reasonably informed decision on the Plan before exercising your right to vote to accept or reject the Plan.[1]

On _____, 2019, after notice and a hearing, the Bankruptcy Court approved this Disclosure Statement as containing information, of a kind and in sufficient detail, adequate to enable the holders of Claims against the Debtor to make an informed judgment to accept or reject the Plan (A copy of the *Order Pursuant to 11 U.S.C. §1125, and FED. R. BANKR. P. 3017 Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan* is included in the packet you have received. **THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A GUARANTY OF THE**

---

[1] Capitalized terms that are not defined in the Disclosure Statement are defined in the Plan.

**ACCURACY OR COMPLETENESS OF THIS INFORMATION OR THE BANKRUPTCY COURT'S ENDORSEMENT OF THE PLAN.**

You should read all of this Disclosure Statement before voting on the Plan.

**HOWEVER, THE DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN ITSELF BY EACH HOLDER OF A CLAIM OR INTEREST. THE DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT THAT REVIEW. THE DESCRIPTION OF THE PLAN IS A SUMMARY ONLY. HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW THE PLAN AND ANY RELATED ATTACHMENTS IN THEIR ENTIRETY FOR A FULL UNDERSTANDING OF THE PLAN'S PROVISIONS. THE DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN.**

You are urged to consult with your own financial and other advisors in deciding whether to vote to approve or reject the Plan. No solicitation of votes may be made except pursuant to this Disclosure Statement, and no person has been authorized to use any information concerning the Debtor or their businesses other than the information contained in this Disclosure Statement.

About this Disclosure Statement:

• The statements contained in this Disclosure Statement are made as of the date that the Bankruptcy Court enters an order approving this Disclosure Statement, unless another time is specified in this Disclosure Statement. Neither the delivery of this Disclosure Statement nor any action taken in connection with the Plan implies that the information contained in this Disclosure Statement is correct as of any time after that date.

• Unless the context requires otherwise: (a) the gender (or lack of gender) of all words used in this Disclosure Statement includes the masculine, feminine and neuter; (b) references to articles and sections (other than in connection with the Bankruptcy Code, the Bankruptcy Rules, another specified law or regulation or another specified document) refer to the articles and sections of this Disclosure Statement; and (c) "including" means "including, without limitation."

• Many capitalized words used in this Disclosure Statement have been defined in the context of the provisions in which they first appear in this Disclosure Statement. Any other capitalized terms used in this Disclosure Statement are intended to have the meanings ascribed to them in the Plan. Any capitalized term not defined in the context of a provision or in the Plan shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules, whichever is applicable.

• You may not rely on this Disclosure Statement for any purpose other than to determine how to vote on the Plan. Nothing contained in this Disclosure Statement constitutes or will be deemed to be advice on the tax or other legal effects of the Plan on holders of Claims or interests.

• Certain of the information contained in this Disclosure Statement is forward-looking. This Disclosure Statement contains estimates and assumptions that may prove not to have

been accurate and financial projections that may be materially different from actual future experiences.

• Acceptance or rejection of the Plan is subject to a number of risks. See "Risk Factors" at Section 9 of this Disclosure Statement.

### 1.03 Plan Balloting and Confirmation Procedures

### 1.04 Holder of Claims and Interests Entitled to Vote

Classes 3, 4, 5, 6, 7, 8, 9 10 are impaired and are entitled to vote to accept or reject the Joint Plan. Claims in Classes 1, and 2 are unimpaired, and the holders of claims in those Classes thereof are conclusively presumed to have accepted the Plan.

### 1.05 Voting Procedures

If you are entitled to vote to accept or reject the Plan, a Ballot (the "Ballot") for acceptance or rejection of the Plan and a pre-addressed envelope for return of the Ballot are enclosed. BALLOTS FOR ACCEPTANCE OR REJECTION OF THE PLAN ARE BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 3, 4, 6, 7, 8 and 10 AND, BECAUSE THEY ARE THE ONLY HOLDERS OF CLAIMS THAT MAY VOTE TO ACCEPT OR REJECT THE PLAN. If you are the holder of a Claim in one of these Classes and did not receive a Ballot, received a damaged or illegible Ballot, or lost your Ballot, or if you are a party in interest and have any questions concerning the Disclosure Statement and Exhibits hereto, the Plan or the voting procedures in respect thereof, please contact:

Eric J. Taube/Mark C. Taylor
WALLER, LANSDEN DORTCH & DAVIS, LLP
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 685-6400
(512) 685-6417 (FAX)

After carefully reviewing this Disclosure Statement, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan, then return the Ballot to the Debtors' counsel, at the address set forth on the Ballot, by **5:00 p.m.**, (Prevailing Central Time) on_____, 2019. Any Ballot not indicating an acceptance or rejection will be deemed an acceptance of the Plan. You may also return your Ballot by courier or fax by following the instructions on the Ballot. **ANY BALLOTS RECEIVED BY THE DEBTOR'S COUNSEL AFTER 5:00 P.M., PREVAILING CENTRAL TIME, ON _____, 2019, WILL NOT BE COUNTED, UNLESS THIS DATE IS EXTENDED BY THE BANKRUPTCY COURT.**

### 1.06 Voting Requirements for Class Acceptance of the Plan

YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT. In order for the Plan to be "accepted" by Creditors and interest holders, at least sixty-six and two-thirds percent (66.66%) in amount of Allowed Claims and more than fifty percent (50%) in number of Allowed Claims voting

in each Class must accept the Plan. By not voting, a Creditor favoring acceptance of the Plan jeopardizes confirmation.

### 1.07 Confirmation Hearing

The Bankruptcy Court has entered an order fixing _____ **2019, at** _____ __.m. (Prevailing Central Time), Bankruptcy Courtroom for the Hon. Christopher Mott, 903 San Jacinto, Austin, Texas as the date, time and place for the initial commencement of a hearing on confirmation of the Plan, and fixing _____, **2019 at 5:00 p.m.**, (Prevailing Central Time), as the time by which all objections to confirmation of the Plan, which must be accompanied by a memorandum of authorities, must be filed with the Bankruptcy Court and served on counsel for the Debtors. The confirmation hearing may be adjourned from time to time without further notice except for the announcement of the adjourned time and date at the confirmation hearing or any adjournment thereof.

Section 1128(a) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, conform to Federal Rules of Bankruptcy Procedure and Local Rules of the Bankruptcy Court, set forth the name of the objecting party, the nature and amount of the Claim or Interest held or asserted by the objecting party against the Debtors' Estate, the basis for the objection and the specific grounds thereof. The objection, together with proof of service thereof, must then be filed with the Bankruptcy Court, with copies served upon the following and upon the Limited Service list in this case:

Eric J. Taube/Mark C. Taylor
WALLER LANSDEN DORTCH & DAVIS, LLP
100 Congress Avenue, 18th Floor
Austin, Texas 78701

**UNLESS AN OBJECTION IS TIMELY AND PROPERLY SERVED AND FILED BY _____, 2019 AT 5:00 P.M. (PREVAILING CENTRAL TIME), IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**SUMMARY OF PROPOSED TREATMENT**

| CLASS | TREATMENT |
|---|---|
| Class 1 – Administrative Claims | Paid on the Effective Date or as agreed by the parties |
| Class 2 – Tax Claims | Liens retained; payment from on-going operations and cash infusion, with final payment no longer than 60 months from  the Petition Date at statutory interest. |
| Class 3 – Amplify | Amplify will have a fully secured claim. Amplify's loan will be restructured and paid interest only for the |

first six months following the Effective Date, and then amortized over 300 months with a balloon maturity at the end of 10 years. Interest shall be 4% for the first year, 4.25% for the second year, 45% for the third year and at the current contract rate for the balance of the loan. Amplify will retain its liens on all Debtors collateral plus a pledge of a license and IP from Copper Kettle, LLC. The restructured debt shall be guaranteed by the holders of 20% or more of the Reorganized Debtor and the guaranty of Christine Celis shall be released

Class 4 – Small Business Admin.

The SBA shall have an Allowed Secured Claim equal to the value of the property that secures their debt under 11 U.S.C. § 506, which Debtor believes to be no more than $800,000. The balance of the debt shall be an Allowed Unsecured Claim. The debt will be paid interest only for six months, and then amortized over 300 months, with a ten year balloon maturity. Interest shall accrue at the rate of 4% for the first year after the Effective Date, at 4.25% for the second year, 4.5% for the third year and at the existing contract rate for the balance of the loan term. The SBA will retain its liens on all of its existing collateral and plus a pledge of a license and IP from Copper Kettle, LLC. The guaranty of Christine Celis will be released.

Class 5 – Pedernales Brewing Co.

The Allowed Secured Claim of Pedernales Brewing Company shall be paid in full over twenty four (24) months with interest at 4%. Pedernales Brewing Company shall continue to be secured by their existing collateral.

Class 6 –Celis Phoenix

Celis Phoenix shall exchange all of its pre and post-petition debt for 100% of the membership interests in the combined reorganized Debtors.

Class 7 – General Unsecured Creditors

Pro rata share of recoveries from Chapter 5 and other claims retained of the Debtors, plus a pro-rated amount from contributions of CP of payments. (after payment of administrative and tax claims). Payments shall commence quarterly for the first quarter after the Effective Date, and continue for up to a period of 16 quarterly payments.

| Class 8 – Unsecured Convenience Class | Holders of claims at or under $500 to receive (if elected) 20 percent of claim paid in 2 equal payments beginning 30 days of the Effective Date and 120 days after the Effective Date . |
| Class 9 – Blue River Fox | Will receive treatment as an unsecured creditor. |
| Class 10 - Hill Morrison, Inc. | Will receive treatment as an unsecured creditor |
| Class 11– Equity Interests | Equity holders will have their equity interest terminated on the Effective Date and will receive nothing under the Plan. |

## ARTICLE 2. **DEBTOR'S BACKGROUND AND FINANCIAL PICTURE**

### 2.01   General

Debtors are each LLC's formed in Texas for the purpose of owning the real estate and operating the Celis Brewery. Operations was the operating entity that conducted business, employed individuals to conduct the brewery business including the "Tasting Room" and to own the equipment which allowed for operations. Real Estate owned the real property on which the Celis Brewery operated. It had no business operations other than the ownership of the real estate. Although Operations had no written lease agreement with the Real Estate, Real Estate allowed the business of Operations to be conducted on the Real Estate in return for Operations paying the obligations to Amplify Credit Union and the SBA, for which each of Operations and Real Estate were fully liable.

### 2.01.1  **History of Debtor and Causes of Bankruptcy Filing**

#### A.     **History**

The Debtors operate Austin's original craft brewery, Celis Brewery.   The brewery originally opened its doors on July 11, 1992, and was an immediate success. After the founder, Pierre Celis, partnered with Miller Brewing Company in 1995, it began to struggle financially, and the original Celis Brewery was sold to Miller Brewing in 2000.  Miller Brewing Company closed in the brewery in 2001.  The trademark and equipment sold to a brewery in Michigan who closed its doors in 2011 and everything was sold during auction including the trademark.  The trademark was sold to another individual who in turn sold it eventually to Christine Celis, daughter of Pierre Celis on February 7, 2017.

#### B.     **Events Leading to the Bankruptcy filing**

After building the Brewery and starting operations in 2017, Operations faced immediate cash flow issues due to a slower than anticipated ramp up of operations, specifically the lack of significant contract brewing work due to a change of business direction from anticipated third party contract brewing work.   The combination of under-capitalization with slower than

anticipated contract brewing opportunities caused cash flow issues that caused both Debtors (who were jointly and severally liable on the obligations to the SBA and to Amplify) to default on these and other obligations. Although both lenders worked with the Debtors in order to determine if debt service could be resumed, Debtors were unable to operate and meet debt service. Additionally, several members of the Board of Managers of Flemish Fox Brewery and Craftworks, LP, which owned 100% of the membership of both of the Debtors resigned. The financial records of the Debtors had not been maintained on a current basis, and Debtors were involved in several litigation matters that used limited resources.

Prior to the Bankruptcy filing, Debtor sought various avenues to find additional investment capital and a solution for its liquidity problems. Although there were several potential suitors and investors, after many months of dealing with cash flow issues, Celis Phoenix, LLC, funded a loan between February, 2019 and the petition date in the amount of $348,116 made a loan secured by specific orders, with the consent of Amplify, who subordinated its liens for that purpose on the pledged receivables generated from specific orders. This financing was insufficient to solve the cash flow issues being experienced by Operations, and Real l Estate as a consequence.

In June of 2019, after not receiving payments for several months, Amplify accelerated the obligations owed to it, and posted the real estate owned by Real Estate and the equipment and personal property owned by Operations for foreclosure. Debtors elected to file for relief under Chapter 11 of the Bankruptcy Code in order to prevent the foreclosure of these assets.

C.     **Current Status**

Debtors filed for relief on July 1, 2019 and continued their operations during the course of these Chapter 11 proceedings. Operations has operated on a break even or slight loss basis since the filing, and has entered into interim and final cash collateral agreements, approved by the Bankruptcy Court on July 7, 2019, August 5, 2019 and September 17, 2019. Additionally, Debtor has sought and obtained Debtor in Possession financing in the amount of $230,000 from CP in order to allow it to continue to operate pending confirmation of the Joint Plan. CP was willing to make the DIP loan in order to allow the Debtors to continue to operate and with the expectation that such loan would be converted in to post confirmation equity.

ARTICLE 3. **SELECTED FINANCIAL INFORMATION,
PROJECTIONS AND VALUATION ANALYSIS**

**3.01**   **General**

This section provides summary financial information concerning the Debtors, their assets and potential sources of recovery for creditors. The information is based on information available as of the date of this Disclosure Statement. Any forward-looking projections, including analysis and valuation of Litigation Claims, is based upon the Debtor's best estimates and belief but, as with any projections, may vary in the future.

**3.02**   **Operating Performance**

The Debtor's most recent budget-to-actual sale revenue and expense analysis is attached as **Exhibit "A"**. (I have this)

### 3.03    Financial Projections of the Reorganized Debtor

Attached as **Exhibit B** are projections for sales, income and expenses for the next 2 years. These are based on the Debtor's historical operations, planned expense cuts, and anticipated re-focused operations. Exhibit B also contains the pro forma balance sheet and income statement relating to the projections.

### 3.04    Valuation and Description of Debtor's Assets

Real Estate - Real Estate owns real property commonly referred to as 2013 and 2101 Rutland Drive, Austin, Texas. The most recent appraisal performed on this property for the benefit of Amplify conducted in March of 2019 determined that the real estate had a fair market value of $4,900,000. Tax appraisals on the real estate are approximately $3,718,000. A small portion of the real estate is leased by Real Estate to Empire Countertops, LLC through mid-2020.

***Personal Property*** - Personal property is owned primarily by Operations and consists primarily of equipment used in the operation of the brewery business and various office furniture and office equipment. The net book value of the equipment is approximately $4,800,000, but Debtor believes that the equipment has a fair market value of less than this amount. The net book value of the office equipment and related assets is approximately $50,000.

Additionally, Debtors may have litigation claims against third parties in connection with activities that occurred prior to the filing date and claims that exist under Chapter 5 of the Bankruptcy Code. At the time of the filing of this Joint Disclosure Statement, neither Debtors nor its professionals have done an analysis of such claims and are not in a position to value them.

### ARTICLE 4. **PROCEEDINGS IN THE CHAPTER 11 CASE**

### 4.01    Commencement and Administration of the Case

The Debtor's Chapter 11 Case was commenced on July 1, 2019. The following is a description of the more significant matters to have come before the Court.

4.01.1     ***Approval of Employment of Waller Lansden Dortch & Davis, LLP, as Debtor's Counsel***

The Court previously approved retention of Waller Lansden Dortch & Davis, LLP as counsel for the Chapter 11 Debtor. As counsel for the Debtors, the firm is entitled to seek interim and final compensation from each of the Debtors as an administrative creditor. . The Court approved the retention of Harney Partners as financial advisors to the Debtors. As financial advisors, Harney is entitled to seek interim and final compensation as an administrative creditor from each of the Debtors.

4.01.2     ***Cash Collateral and DIP Financing***

The Court has approved a series on Interim Orders authorizing the Debtor to use cash collateral, on specified budgets and, on September 17, 2019 entered a Final Order authorizing use of cash collateral

On September 17, the Court approved an Interim Order Authorizing Debtor in Possession Financing in the amount of $230,000 from Celis Phoenix. On September 27, the Court approved the Debtor in Possession financing from Celis Phoenix as a final agreement of the parties.

## ARTICLE 5. SUMMARY OF THE DEBTOR'S PLAN

### 5.01    Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, the plan proponent attempts to restructure a debtor's financial affairs or effectively liquidate the debtor's assets for the benefit of the creditors, equity interest holders and other parties in interest. The Chapter 11 plan is the debtor's agreement with its creditors containing the terms and conditions for the operation and/or liquidation of the properties and assets of the debtor and the treatment of the Claims and interests of creditors and parties-in-interest.

According to Section 1125 of the Code, acceptances of a Chapter 11 plan may be solicited by the debtor only after a written disclosure statement approved by the Bankruptcy Court as containing adequate information has been provided to each creditor or equity interest holder.

### 5.02    Terms of the Plan Control

The following represents the Debtor's best efforts to describe the treatment afforded the Claims of the Creditors in various Classes. Creditors should be aware that the terms of the Plan control the treatment of all Claims. In the event of any inconsistencies between the Plan and this Disclosure Statement, the terms of the Plan shall be, in all events, determinative. The Debtor urges all Creditors to read the Plan for a complete understanding of the treatment of their Claims.

### 5.03    Classification and Treatment

5.03.1  Class I – Administrative Claims.  Each holder of an Allowed Administrative Claim shall receive from the Debtor with respect to such Allowed Claim, either (i) the amount of such Allowed Claim from the Debtor, in one (1) cash payment on the later of (a) the Effective Date, (b) the date that is sixty (60) days after a request for payment of the Claim is filed, (c) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

Applications for compensation and reimbursement filed by professionals employed under §327 of the Bankruptcy Code or otherwise employed by order of the Bankruptcy Court shall be filed no later than forty five (45) days after the Effective Date. All other requests for payment of Administrative Claims (or any other means of preserving and obtaining payment of Administrative

Claims found to be effective by the Bankruptcy Court) shall be filed by the earlier of (i) thirty (30) days after the date of service of notice of the Effective Date, or (ii) any applicable bar date established by the Bankruptcy Court and noticed separately by the Debtor, and if no timely request for payment of Administrative Claim is received, such claims shall be forever barred and shall not be assertable in any manner against the Debtor or the estate provided, no request for payment shall be required with respect to Administrative Claims that have been paid previously or with respect to Administrative Claims representing liabilities incurred in the ordinary course of business, unless a dispute exists as to any such liabilities or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on any such liability. This class is unimpaired.

5.03.2 Class II – Priority Tax/Secured Claims. Each holder of a Class II Secured Tax Claim, if any exist, shall receive payment of its Allowed Claim, in full, within sixty (60) months from the Petition Date, with statutory interest accruing form the Petition Date, in equal monthly payments beginning sixty (60) days from the Effective Date. Further, the Travis County Taxing Authorities shall not be required to file any requests for payment of postpetition taxes under Plan Paragraph 4.1(c)(iii).

In the event of a payment default in payment of the Class II Allowed Claim, the Holder of the Class II Allowed Claim shall provide notice of default, and twenty (20) days' opportunity to cure, to the Debtors, with a copy to Amplify and the SBA. Such claim is unimpaired.

5.03.3 Class III – Secured Claim of Amplify. The Class III claim of Amplify is fully secured and will be reinstated and modified. Amplify will maintain and retain all pre-petition collateral and all collateral granted to it pursuant to post-petition orders of the Court. The Class III claim of Amplify shall be paid interest only monthly for the first six months following the Effective Date and amortized for 300 months thereafter with a ten (10) year balloon maturity. The interest rate shall be four percent (4%) for the first year, four and one quarter percent (4.25%) for the second year, four and one half percent (4.5%) for the third year and the existing contract of the Amplify notes thereafter. In addition to the collateral described above, the Amplify Class III claim will be secured by trademark and intellectual property owned by Copper Kettle, LLC. The existing guaranty of Christine Celis shall be released and new guarantees executed by parties who own more than 20% of the reorganized Debtors. The Reorganized Debtor will execute new loan documentation acceptable to Amplify to reflect the obligations. . Such claim is impaired.

5.03.4 Class IV – Secured Claim of the SBA. The Allowed Secured Claim of the SBA shall be in an amount equal to the value of the collateral that secures the obligations owed by the Debtors to the SBA, which is subordinate to the liens and security interests of Amplify. Unless determined by the Bankruptcy Court to be a different amount under 11 U.S.C. §506, such Allowed Class IV claim shall be $800,000. Any amounts owed to the SBA, shall be treated as Class VII, general unsecured claims. The Allowed Class IV claim of the SBA shall be secured by a lien on all pre-petition collateral and all collateral granted to the SBA pursuant to post petition orders of the Court. All liens shall be inferior to the liens in favor of Amplify. The Allowed Class IV claim

shall be paid quarterly, interest only for the first six months and fully amortized over 300 months. Interest will be accrue and be payable at four percent (4%) for the first year after the Effective Date, at the rate of four and one quarter percent (4.25%) for the second year; four and one half percent (4.5%) for the third year and at the existing contract rate thereafter. Additionally, the SBA Class IV secured claim shall be secured by trademark and intellectual property owned by Copper Kettle, LLC inferior to the lien of Amplify. The existing guaranty of Christine Celis shall be released upon the pledge by Copper Kettle, LLC. Such claim is impaired

5.03.5  Class V – Claim Pedernales Brewing Company. The Allowed Secured Claim of Pedernales Brewing Company shall be equal to the value of the collateral securing the Claim and shall be paid in full over twenty four months with interest at 4%, with the first payment to begin on the 30th day after the Effective Date. The balance of the claim owed to Pedernales Brewing Company shall be treated as an unsecured claim in Class VII. Such claim is impaired.

5.03.6  Class VI – Secured Claim of Celis Phoenix, LLC. The pre-petition secured claim and the post-petition secured claim of Celis Phoenix, LLC as DIP Lender shall be fully satisfied by the conversion of all such debt to 100% ownership of the equity in the reorganized Debtors. Such claim is impaired.

5.03.7  Class VII – General Unsecured Creditors. Holders of Allowed General Unsecured Claims will receive pro-rata distributions from amounts contributed by Celis Phoenix in the amount of $200,000 in the aggregate and after payments to Class II payments have been made. Such payments shall be made by the reorganized Debtor monthly for up to 60 months at the same time that Class II creditors are paid. In addition, Class VII Allowed Claims will be paid on a pro-rated basis from recoveries obtained by the Plan Agent from the prosecution of Chapter 5 claims and any other litigation claims belonging to the Debtors. The Debtors and/or Celis Phoenix shall fund an initial $25,000 to the Plan Agent for collection activities of such claims. This class is impaired.

5.03.8  Class VIII – Convenience Class Unsecured Creditors. Holders of Allowed General Unsecured Claims whose claims are at or below $500 or who agree to limit their claims to $500 will be permitted, at their sole option, to elect to receive 100 of their Allowed Claim in two (2) equal monthly payments on the 30th and 60th day following the Effective Date. The election will be made at the time of voting on the Debtors' Plan. This Class is impaired.

5.03.9  Class IX – Blue River Fox Secured Claim. Blue River Fox has filed a secured claim, which Debtors assert is not secured under 11 U.S.C. § 506. Debtor intends to object to the secured claim filed by Blue River Fox. In the event that Blue River Fox has an allowed secured claim, such claim is subordinated to each of the claims of the SBA and Amplify, and will receive the same treatment provided to the SBA to the extent of the value of the collateral securing the Blue River Fox claim after each of the Amplify and SBA Allowed Secured Claim is paid in full.

This Class, to the extent it exists at all, is unimpaired.

5.03.10    Class X – Claim of Hill Morrison, Inc.  Hill Morrison has filed a secured claim against real estate owned by FFBC Real Estate, LLC, which Debtor believes is not allowable under 11 U.S.C. § 506. Debtor intends to object to the secured portion of such claim. Debtor believes that the entirety of the Hill Morrison claim will be treated in Class VII.  In the event that the Court determines that there is value to the secured claim of Hill Morrison, such claim is subordinated to the claim of Amplify and the SBA and shall be paid in full after the claims of the SBA and Amplify are fully paid. This Class, to the extent it exists at all, is impaired.

5.03.11    Class XI - Equity Interests.  Existing Equity Interests shall be canceled, and new equity shall be issued to Celis Phoenix, LLC or an entity designated by it, in return for the satisfaction of the DIP loan made to Debtors post-petition, the cash payments provided herein, and to commitment to fund up to $1,000,000.00 of cash in to the reorganized Debtors in order to make payments under this Plan.

### 5.04    Payments to U.S. Trustee.

Debtor shall make the payments and file all reports required by 28 U.S.C. § 1930(a)(6) until the Bankruptcy Case is closed, converted or dismissed.

#### 5.04.1 *Discharge of Claims*

The rights afforded in the Plan and the payments and distributions to be made thereunder are in complete exchange for, and in full satisfaction and release of, all existing Claims, and, debts and obligations of any kind, nature or description whatsoever of or against the Debtor or any of its assets or property to the fullest extent permitted under Section 1141 of the Bankruptcy Code.  Upon confirmation of the Plan, except as provided in the Plan, all existing Claims against the Debtors and the Reorganized Debtors shall be and shall be deemed to be discharged. All holders of Claims or Equity Interest shall be precluded from asserting against the Debtors, or any of its assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim or proof of interest, except as provided in the Plan.  Upon the Effective Date, the Debtors shall be deemed discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim or Interest based upon such obligation is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of a Claim or Interest based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor.  In accordance with Section 524 of the Bankruptcy Code, the discharge provided for hereunder shall void any judgment against the Debtor to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or its Property to the extent it relates to a discharged Claim, except as provided in the Plan.

**5.04.2**    *Plan Releases and Exculpation*

None of the Debtors, Reorganized Debtors, its counsel, or any other party in interest, or any of their respective members or former partners, general partners, members, agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan (the "Chapter 11 Activities"), except for their acts or omissions constituting willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction, and in all respects are entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in connection with the Chapter 11 Activities. No holder of a Claim, or any other party in interest, including their respective agents, employees, representatives, financial advisors, attorneys or affiliates, have any right of action against the Debtors, the Reorganized Debtors, or their counsel for any act or omission in connection with the Chapter 11 Activities, except for their acts or omissions constituting willful misconduct or gross negligence as finally determined by a court of competent jurisdiction. In return for the contribution of Copper Kettle, LLC, or guarantees of Christine Celis will be released and avoided. .

## ARTICLE 6.  IMPLEMENTATION OF PLAN

### 6.01    Summary of Implementation of the Plan

All Cash necessary for the Reorganized Debtors to make payments pursuant to the Plan

shall be obtained from operations of the Debtors and from cash contributions of Celis Phoenix,

LLC.

### 6.02    The Reorganized Debtors' Obligations Under the Plan

The Reorganized Debtors shall perform all of the obligations under the Plan, including obligations to pay or otherwise satisfy the Allowed Claims. From and after the Effective Date, the Reorganized Debtors shall, among other things:

(1)    administer the Plan and take all steps and execute all instruments and documents necessary to effectuate the Plan;

(2)    reconcile Claims and resolve Disputed Claims, including compliance with any order of the Court arising from the Section 506 valuation, and administer the Claims allowance and disallowance processes as set forth in the Plan, including, without limitation, objecting, prosecuting, litigating, reconciling, settling and resolving Claims and Disputed Claims in accordance with the Plan;

(3)    make decisions regarding the retention, engagement, payment and replacement of professionals, employees and consultants;

(4)     administer the Distributions under the Plan, including (i) making Distributions in accordance with the terms of the Plan and (ii) establishing and maintaining the various Reserves;

(5)     exercise such other powers as necessary or prudent to carry out the provisions of the Plan;

(6)     invest any Cash pending Distribution;

(7)     file appropriate tax returns; and

(8)     take such other actions as may be necessary or appropriate to effectuate this Plan.

Following the Effective Date the Debtor may pay its post Effective Date operating expenses in the ordinary course of its business without notice or orders of this Court.

### 6.03    Management of Debtors:

On and after the Effective Date, Arnold Jin will be Chief Executive Office of the reorganized Debtors, and Jason Paull will be the Chief Operating Officer of the Reorganized Debtors.

### 6.04    Exemption from Transfer Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan or the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan, including without express or implied limitation, any transfers to or by the Reorganized Debtor shall not be subject to any transfer, sales, stamp or other similar tax.

### 6.05    Claims Objections

Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date including any order of the Bankruptcy Court pursuant to §506 of the Bankruptcy Code, the Reorganized Debtors may object to the Allowance of any Claim against the Debtors or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code. All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 60 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Reorganized Debtors' motion filed (but not necessarily heard) before the first Business Day that is 60 days after the Effective Date. Debtors may contest the amount of attorney's fees and interest sought by any creditor. *Debtors reserves the right to object to or seek estimation of any claims. A VOTE FOR THE PLAN WILL NOT EXCULPATE OR EXCLUDE ANY CLAIMANT FROM HAVING ITS CLAIM OBJECTED TO OR BE DEEMED AN ALLOWANCE OF SUCH CLAIM.*

### 6.06    Contingent Claims

Until a Contingent Claim becomes an Allowed Claim or is determined to be a Disallowed Claim, the Claim will be treated as a Disputed Claim for all purposes under this Plan. The holder of a Contingent Claim will be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtors on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.

### 6.07    Distributions on Allowance or Disallowance of Disputed Claims

No distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this Plan. If a Disputed Claim becomes an Allowed Claim, the Reorganized Debtors will make a distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

### 6.08    Undeliverable/Returned Distributions

Any distribution to be made to a Creditor will be sent to that Creditor at (i) the address set forth on the proof of claim filed for such Creditor, or (ii) if no proof of claim is filed, at the address set forth on the Debtors schedules. In the event that a distribution as herein provided is returned as undeliverable, or a distribution is returned on account of there being no payment due to the affected Creditor, the Reorganized Debtors shall hold such distribution for the affected Creditor for a period of 60 days following the Date of that distribution for the benefit of the Creditor. If the affected Creditor does not make a demand, in writing, for such unclaimed distribution within the 60-day period, the Creditor shall forfeit all entitlement to the distribution, and the distribution shall revert to the Reorganized Debtor.

### 6.09    De Minimis Distributions

Any other provision of the Plan notwithstanding, the Reorganized Debtors shall not be required to make distributions to holders of Allowed Claims in an amount less than $50.00 (unless such Allowed Claim is less than $50.00). Cash allocated to an Allowed Claim but withheld from distribution pursuant to this subsection shall be held for the account of and future distribution to the holder of such Allowed Claim.

### 6.10    Additional Charges

Except as may be expressly provided in the Plan or allowed by Final Order of the Bankruptcy Court, no interest, penalty, attorney's fee or late charge shall be allowed or paid with respect to any Claim.

### 6.11 Treatment of Executory Contracts and Unexpired Leases

(a) **Assumption or Rejection of Executory Contracts and Unexpired Leases**. On the Effective Date, except as otherwise provided in the Plan, any unexpired lease or executory contract that has not been previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court shall be deemed rejected by the Debtors under Sections 365(a) and 1123 of the Bankruptcy Code, other than those executory contracts and unexpired leases that are (a) listed on the Plan at **Exhibit A** thereto (as such list may be amended, supplemented or modified on or before the Confirmation Date) or (b) subject to a motion to reject that is pending on the Effective Date. Entry of the Confirmation Order shall constitute approval of such assumptions, and the rejection of the executory contracts or unexpired leases listed in the exhibit to be provided at the confirmation hearing hereto (as such list may be amended, supplemented or modified on or before the Confirmation Date), pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

(b) **Objections to Assumption and Assignments of Executory Contracts and Unexpired Leases**. To the extent that any party to an executory contract or unexpired lease identified for assumption, or any other party in interest, (a) asserts arrearages or damages pursuant to § 365(b)(1) of the Bankruptcy Code in an amount different from the amount, if any, set forth in the Petition and Schedules, (b) has any objection to the proposed adequate assurance of future performance, if required, or (c) has any other objection to the proposed assumption, cure, or assignment of a particular executory contract or unexpired lease on the terms and conditions provided for herein, all such asserted arrearages and any other objections shall be filed and served within the same deadline and in the same manner established for filing objections to Confirmation.

Failure to assert any arrearages different from the amount set forth in the Schedules (or the exhibits thereto), or to file an objection within the time period set forth above, shall constitute consent to the assumption, cure, and assignment on the terms provided for herein, including acknowledgment that (a) the Debtors (or their assignees) has provided adequate assurance of future performance, if required, (b) the amount identified for "cure," if any, is the amount necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the executory contract or unexpired lease to be assumed, and (c) no other defaults exist under such executory contract or unexpired lease.

If an objection to assumption and assignment is filed based upon lack of adequate assurance of future performance or otherwise, and the Court determines that the Debtors cannot assume the executory contract or unexpired lease either as proposed or as may be proposed pursuant to a modified proposal submitted by the Debtors, then the unexpired lease or executory contract shall automatically thereupon be deemed to have been rejected

(c) **Payments Related to Assumption of Executory Contracts and Unexpired Leases.** Any monetary defaults, including claims for actual pecuniary loss, under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed by the parties, or as ordered by the Bankruptcy Court in Cash within 90 days following the Effective Date, or on such other terms as may be agreed to by the parties to such executory contract or

unexpired lease. In the event of a dispute regarding (a) the amount of any cure or pecuniary loss payment, (b) the ability of Reorganized Debtors to provide adequate assurance of future performance under the contract or lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure or pecuniary loss payments required by § 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following entry of a Final Order resolving the dispute and approving assumption.

(d)     **Bar Date for Rejection Damages.** If the rejection of an executory contract or unexpired lease pursuant to Article 6 of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely Filed and is a Allowed Claim, shall be classified in Class 7; provided, however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against Debtors, Reorganized Debtors, their successors or properties, unless a proof of Claim is Filed and served on the Reorganized Debtors within 30 days after the date of the notice of the entry of an order of the Bankruptcy Court authorizing rejection of the executory contract or unexpired lease, which order may be the Confirmation Order.

(e)     **Contracts to be Assumed**. Debtor is not required to designate contracts to be assumed or rejected until confirmation.

### 6.12    Pending Claims and Causes of Action

The following is a general discussion of the type and nature of claims and causes of action of the Estate:

NOTE: THE FOLLOWING DISCUSSION IS NOT INTENDED TO BE EXHAUSTIVE AND SHALL NOT LIMIT OR MODIFY ANY CLAIMS OR CAUSES OF ACTION OF THE ESTATE.

Some of the payments made by the Debtors to creditors within ninety (90) days of the filing

of bankruptcy (or to an insider within one year of the filing of bankruptcy) may be subject to a

claim for recovery as preferential transfers under 11 U.S.C. §547. A listing of such payments and

creditors is contained in Debtors' schedules filed with the Bankruptcy Court in this case

The Reorganized Debtors have the sole right to decide to proceed, not proceed or settle

any such claims.

**ALL CLAIMS OF THE BANKRUPTCY ESTATE ARE BEING PRESERVED AND TRANSFERRED TO REORGANIZED DEBTORS UNDER THE PLAN.**

**Any and all causes of action which the Debtors may have, including, but not limited to Avoidance Actions, which may be enforceable under any statute, shall be preserved and**

**shall constitute Property of the Estate to be conveyed to Reorganized Debtors in accordance with the Plan. The Court shall retain jurisdiction to determine all such causes of action.**

**YOU MAY BE SUED IF:**

i)      You were or are a creditor and you received a payment on a prior debt within ninety (90) days before the Petition Date;

ii)     You were an insider of the Debtors and you received a payment on a prior debt within one (1) year before the Petition Date;

iii)    You received any payments or property from the Debtors for goods or services you did not deliver or provide before the Petition Date;

iv)     You received any payments of property from the Debtors without providing reasonably equivalent value;

v)      You received pre-payments, advances or deposits from the Debtors which you did not earn;

vii)    You were involved in pending litigation with the Debtors at the time of the Petition Date or have been sued thereafter;

viii)   You owe the Debtors any money under a contract or as a result of your breach of contract with the Debtor;

ix)     Potential claims against you or any of your affiliates are described or referred to in this Disclosure Statement; or

x)      The Debtors have any claims against you under state or federal law, whether in contract or in tort, whether known or unknown.

## ARTICLE 7. **CONFIRMATION OF THE PLAN**

### 7.01    Feasibility

As a condition to confirmation of a plan, Section 1129 of the Bankruptcy Code requires, among other things, that the Bankruptcy Court determine that confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor. In that regard, the Court has ordered a Section 506 valuation hearing to be conducted in connection with the Confirmation Hearing, as discussed above. The outcome of that hearing may impact the terms and feasibility of this Plan.

The projections set forth in **Exhibit B** are Debtors' best estimate of the revenues and expenses under the Plan, and demonstrate the Plan's feasibility.

### 7.02    Best Interests Test

In order to confirm the Plan, the Court must find that each holder of an impaired Claim or Equity Interest either (i) accepted the Plan or (ii) received or retained under the plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the debtor was liquidated under Chapter 7 of the Bankruptcy Code. In a typical Chapter 7 case the debtor ceases operations and a trustee is appointed to conduct an orderly liquidation of the debtor's assets. The proceeds, net of trustee's fees and other costs and expenses incurred in conducting the liquidation, are distributed to creditors in accordance with their rights and statutorily prescribed priorities of payment.

If this Case was converted to a liquidation under Chapter 7, the Court would likely lift the automatic stay to permit Amplify, Celis Phoenix and the SBA and other secured creditors to foreclose their liens on the their collateral. The Debtors believe that there will be no recovery to unsecured creditors in such a context (because the liquidation of assets would likely not occur in an orderly or extended fashion) and that the costs of administration of the Chapter 7 bankruptcy would exceed any anticipated recovery except for the potential of Chapter 5 claims, which are being liquidated for the benefit of unsecured creditors under the Joint Plan.

Based upon the foregoing liquidation analysis, unsecured creditors and equity interest holders would receive no distributions on account of their Claims in a Chapter 7 liquidation. Under the Plan, those creditors will receive distributions at least in the amount that they would get in a Chapter 7 Liquidation.

## ARTICLE 8. **ALTERNATIVES TO THE PLAN**

### 8.01    <u>General</u>

The Debtors believe that the Plan affords the holders of Claims the potential for the greatest realization on the Debtors' assets and, therefore, is in the best interests of such holders. If the Plan is not confirmed, however, the theoretical alternatives include: (a) an alternative plan of reorganization; or (b) liquidation of the Debtors under Chapter 7 of the Bankruptcy Code; or (c) dismissal of the Chapter 11 Case. BASED UPON DEBTOR'S ASSESSMENT, UNSECURED CREDITORS WOULD RECEIVE NO DISTRIBUTIONS IN A CHAPTER 7 CASE OR IN THE EVENT OF DISMISSAL OF THE CASE.

### 8.02    <u>Alternative Plans</u>

If the Plan is not confirmed, the Debtors or any other party in interest in the case could attempt to formulate and propose a different plan. Other parties may propose alternative plans, but the Debtors do not believe that any other plan will provide a greater recovery for the Creditors than proposed by Debtors' Plan, or that any such plans will be feasible. Additionally, Amplify, Celis Phoenix and the SBA who hold lien on all of the Debtor's assets, would likely be permitted to pursue its collateral; in that event, Debtors does not project that there would be a distribution to unsecured creditors. On a quick-sale or bulk sale liquidation basis, in the Debtors' estimate (based on the existing appraisal and the Debtor's many years of experience), the remaining asset value would be subsumed by Frost's debt.

### 8.03    <u>Liquidation Under Chapter 7 or Dismissal</u>

If no Plan can be confirmed, this Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code. In a Chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtors. The proceeds of the liquidation would be distributed to the respective holders of Claims against the Debtors in accordance with the priorities established by the Bankruptcy Code. As set forth above, according to Frost Bank's appraiser (SPI), the maximum Forced Liquidation Value of the Debtor's parts inventory is approximately $7,161,314.00 which, when combined with the remaining receivables, does not exceed the Frost Bank debt and costs to liquidate. This analysis is also subject to the disclosure of the recent IBA approval set out in Article 3.

As set forth in the preceding section, the Plan is clearly superior to a Chapter 7 liquidation. No separate liquidation analysis has been prepared as an exhibit.

## ARTICLE 9. **RISK FACTORS**

The risk factors are discussed in Section 7 above.

### 9.01    Uncertainty in the Financial Projections and Plan Default

The Projections are based on numerous assumptions that are an integral part of the projections. The assumptions and estimates underlying the projections are inherently uncertain and are subject to business, economic and competitive risks and other uncertainties which could materially affect the accuracy of the Projections. Consequently, the Projections contained in this Disclosure Statement are not intended, nor should they be received as representations that the projections will be achieved. In the event of a default under the Plan, such default in the performance of the Plan shall not automatically result in the termination of the Plan or constitute a revocation of the Confirmation order. In the event of a default by the Debtors under the Plan, the Creditors, after giving a ten (10) day written notice and opportunity to cure to the Debtors at their 2010 Rutland Drive, Austin, Texas 78727, with a copy to counsel for the Debtors, may exercise any rights granted to them under documents executed to evidence the Plan or any rights available to them under applicable non-bankruptcy law. In the absence of a document executed to evidence the Plan, this Plan may be enforced as a contract by filing suit to collect the payments required under the Plan as if the Plan were a promissory note or other written contract.

## ARTICLE 10. **CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

### 10.01    Income Tax Consequences

The transactions contemplated by the confirmation of the Plan may have an impact on the tax treatment received with respect to distributions under the Plan. That impact may be adverse to a creditor or interest holder. The Debtors have attempted to structure the Plan to preserve any valuable tax attributes.

An analysis of federal income tax consequences of the Plan to creditors, interest holders, and the Debtors requires a review of the Internal Revenue Code ("IRS Code"), the Treasury regulations promulgated there under, judicial authority and current administrative rulings and practice. The Plan and its related tax consequences are complex. Neither the Debtors nor the Debtors' counsel have requested a ruling from the Internal Revenue Service with respect to these matters. Accordingly, no assurance can be given as to the IRS's interpretation of the Plan.

THE TRANSACTION CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR INTEREST HOLDER. THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR INTEREST HOLDER. NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR INTEREST HOLDER. EACH CREDITOR OR INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.

## ARTICLE 11. **Jurisdiction of the Court**

### 11.01    General Retention of Jurisdiction

Until the Bankruptcy Case is closed, the Bankruptcy shall retain the fullest and most extensive jurisdiction permissible, including, without limitation, that necessary (a) to ensure that

the purposes and intent of the Plan are carried out, (b) to enforce and interpret the terms and conditions of the Plan, and (c) to enter such orders or judgments including, without limitation, injunctions necessary to enforce the rights, title, and powers of the Debtors and/or the Reorganized Debtors. Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Interests in the Debtor and to adjudicate and enforce all other causes of action that may exist on behalf of the Debtor.

### 11.02 Specific Purposes

Without limiting the effect of Section 11.01 the Bankruptcy Court shall retain jurisdiction after Confirmation to:

(a)    modify the Plan after entry of the Confirmation Order, pursuant to the provisions of the Plan, the Bankruptcy Code, and the Bankruptcy Rules;

(b)    correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Plan, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(c)    hear and determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(d)    hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, and to enforce, including by specific performance, the provisions of the Plan;

(e)    hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the settlement agreements, asset purchase agreements or other agreements entered into by the Debtors during the Case,

(f)    enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order;

(g)    assure the performance by Reorganized Debtors of their obligations to make distributions under the Plan;

(h)    enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtors, Reorganized Debtors, or the Plan;

(i)    hear and determine any and all adversary proceedings, applications, and contested matters, including any remands after appeal;

(j)     ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(k)     hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, setoff, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of Section 157 of title 28 of the United States Code;

(l)     enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(m)     hear and determine any motions, contested matters or adversary proceedings involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtors and/or Reorganized Debtors arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Case;

(n)     hear and determine all applications for the employment or compensation of Professional Persons and reimbursement of expenses under Sections 330, 331, or 503(b) of the Bankruptcy Code or the Plan;

(o)     recover all assets of the Debtors and Property of the Estates wherever located, including actions under chapter 5 of the Bankruptcy Code;

(p)     hear and determine any and all motions pending as of the Confirmation Date for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(q)     hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(r)     consider and act on the compromise and settlement of any Claim against, or Interest in, the Debtor, including, without limitation, any disputes relating to any Administrative Claims, any Bar Date, or Bar Date Order;

(s)     hear and determine all questions and disputes regarding title to the assets of the Debtor, its respective Estate;

(t)     hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Case; and

(u)     enter such orders as are necessary to implement and enforce any injunctions provided for in the Plan and Confirmation Order.

## ARTICLE 12. **MISCELLANEOUS**

### 12.01 Amendment or Modification of the Plan

This Plan may be amended or modified by the Debtors prior to the hearing on confirmation without notice or hearing and without an additional Disclosure Statement pursuant to § 1127(a) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 3019. Post-confirmation amendments or modifications of the Plan may be allowed by the Court under § 1127(b) of the Bankruptcy Code if the proposed amendment or modification is offered before the Plan has been substantially consummated. The sole right to amend or modify the Plan at any time shall be reserved to the Debtor.

### 12.02 Modification of Loan and Collateral Documents

12.02.1    To the extent that the Plan proposes changes in the treatment of Allowed Secured Claims, restated or amended or modified documents will be executed in order to properly document and reflect the terms of the plan for the benefit and protection of the affected lender. The form of such documents will be subject to lender approval.

### 12.03 Effective Date and Final Decree

The Effective Date will be the first Business Day that is thirty (30) days after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions to effectiveness set forth in the Plan have been satisfied or waived in accordance with the terms of the Plan. No payments to creditors will be made prior to the Effective Date. Debtor intends to file a motion for entry of a final decree within six (6) months form the Effective Date.

## ARTICLE 13. **REQUEST FOR APPROVAL AND ACCEPTANCE OF PLAN**

WHEREFORE, DEBTORS submit this Disclosure Statement and the information contained therein, in good faith, in accordance with the provisions of Title 11, U.S.C. § 101 et. seq. for consideration by Creditors and other parties in interest, and as the sole source of information furnished by the Debtors, or to be furnished by the Debtors, in solicitation of acceptance of Debtors' Plan.

Dated: September 27, 2019

Respectfully submitted,

FFBC REAL ESTATE, LLC

/s/ *Christine Celis*
By: Christine Celis
Its: Manager

FFBC OPERATIONS, LLC

/s/ *Christine Celis*
By: Christine Celis
Its: Manager

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
WALLER, LANSDEN, DORTCH & DAVIS, LLP
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (FAX)

ATTORNEYS FOR DEBTORS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the parties on the attached service list electronically via the Court's ECF system or via first class mail on September 30, 2019.

/s/ *Eric J. Taube*
Eric J. Taube

# LIMITED SERVICE LIST

**Debtors**
FFBC Operations, LLC
FFBC Real Estate, LLC
10001 Metric Blvd.
Austin, TX 78758

**Counsel to Debtors**
Waller Lansden Dortch & Davis
LLP
Attn: Eric J. Taube/Mark C. Taylor
100 Congress Ave., Ste. 1800
Austin, TX 78701

**Governmental Agencies**
Bruce Elfant - Tax Assessor
PO Box 149328
Austin, TX 78714-9328

Internal Revenue Service
Centralized Insolvency Office
P. O. Box 7346
Philadelphia, PA 19101-7346

Texas Workforce Commission
TWC Building-Regulatory
Integrity Div.
101 E. 15th St.
Austin, TX 78778

Texas Alcoholic Beverage
Commission
Licenses and Permits Division
P.O. Box 13127
Austin, TX 78711

Texas Comptroller of Public
Accounts
Revenue Accounting Div.-
Bankruptcy Sec.
P.O. Box 13528 Capitol Station
Austin, TX 78711

Travis County Tax Office
5501 Airport Blvd
Austin, TX 78751

TTB Excise Tax Bureau
P.O. Box 790353
St. Louis, MO 63179 -0353

U.S. Small Business
Administration
Little Rock Commercial Loan Svc
Center
2120 Riverfront Drive, Ste. 100
Little Rock, AR 72202

U.S. Small Business
Administration
Attn: Stephen Bass
615 E. Houston Street, Suite 298
San Antonio, Texas 78205

United States Trustee
903 San Jacinto, Ste. 230
Austin, TX 78701

**Secured Creditors**
Amplify Credit Union
PO Box 81369
Austin, TX 78708

Wells Fargo Corp Trust Services
NW 6441
PO Box 1450
Minneapolis, MN 55485-6441

Celis Phoenix, LLC
4627 Inicio Lane
Austin, TX 78725

Crown Equipment
PO Box 941173
Cincinnati, OH 45264-1173

Navitas Credit Corp.
111 Executive Center Dr.
Ste. 102
Columbia, SC 29210

Pedernales Brewing Company
335 Skyline Dr.
Harper, TX 78631

Wells Fargo Finance
PO Box 29482
Phoenix, AZ 85038

Westrock CP, LLC
P.O. Box 409813
Atlanta, GA 30384

**Consolidated List of
Twenty Largest Unsecured
Creditors**
The Blue River Fox, LLC
Attn: Jeff Ezell
3839 Bee Caves Rd., Ste. 205
Austin, TX 78746

Eventbrite
155 5th St.
San Francisco, CA 94103

Hill Morrison Inc. dba HMI
Construction
5806 Timber Trail
Austin, TX 78731

Berlin Packaging
PO Box 74007164
Chicago, IL 60674-7164

Ampersand
2901 Via Fortuna, Suite 185
Austin, TX 78746

Microstar
2401 15th Street, Suite 200
Denver, CO 80202

Co.Mac. S.r.l.
Via Giuseppe Garibaldi, 34N
24040 Bonate Sotto BG
ITALY

Country Malt Group/Brewcraft
USA
PO Box 51602
Los Angeles, CA 90051-5902

BrauKon
Gewebering 3
83370 Seeon
GERMANY

American Canning
8219 Burleson Road
Suite 300
Austin, TX 78744

Crosby Hop Farm LLC
8648 Crosby Rd NE
Woodburn, OR 97071

Brewers Supply Group (BSG)
P.O. Box 74769
Chicago, IL 60694-4769

Pen & Tell Us
2101 Elton Lane
Austin, TX 78703

Great Western Malting Company
PO Box 1529
Vancouver, WA 98668-1529

Great American Insurance Group
(SK&P Ins)
9600 Great Hills Trail, Suite 170E
Austin, TX 78759-6327

Fruition Construction LLC
3865 NC-16 Business
Denver, NC 28037

Transmarket
P.O. Box 16651
Temple Terrace, FL 33687

James Houchins
P.O. Box 40028
Austin, TX 78704

The Boelter Companies
P.O. Box 8741
Carol Stream, IL 60197-8741

Pak Tech
1680 Irving Road
Eugene, OR 97402

**Notice Parties**
Streusand Landon Ozburn
Lemmon LLP
Attn: Sabrina Streusand/
Rhonda Mates
1801 S. Mopac, # 320
Austin, TX 78746

Hajjar Peters LLP
Attn: Charlie Shelton
3144 Bee Caves Rd.
Austin, TX 78746

Stephen W. Sather
Barron & Newburger, PC
7320 N. Mopac Expy., Ste. 400
Austin, TX 78731

Kimberly A. Walsh
Assistant Attorney General
Bankruptcy & Collections Div.
MC008
P.O. Box 12548
Austin, TX 78711-2548

Stephen Matthew Schultz
The Schultz Law Firm PC
The Penthouse, Suite 104
1212 Guadalupe Street
Austin, TX 78701

Kell C. Mercer
Kell C. Mercer, P.C.
1602 E. Cesar Chavez Street
Austin, TX 78702

Travis County
Attn: Jason A. Starks
Assistant County Attorney
P.O. Box. 1748
Austin, TX 78767

Allen M. DeBard
Langley & Banack Inc.
Trinity Plaza II, Suite 700
745 East Mulberry
San Antonio, Texas 78212-3166

Jonathan L. Gold
Michael Best & Friedrich LLP
The Wharf
1000 Main Avenue SW, Suite 400
Washington, D.C. 20024

Joseph D. Brydges
Michael Best & Friedrich LLP
One South Pickney St., Suite 700
Madison, WI 53703

Alcohol & Tobacco Tax & Trade
Bureau
Daniel Peralta, Senior Counsel
1301 Clay Street, Suite 650N
Oakland, CA 94612

Stephen G. Wilcox
Wilcox Law, PLLC
P.O. Box 201849
Arlington, TX 76006

Steven B. Bass
Assistant US Attorney
903 San Jacinto Blvd., Suite 334
Austin, TX 78701

Pedernales Brewing Company
335 Skyline Dr.
Harper, TX 78631
Via Email: clhereford7@gmail.com

Rebekah Small
Sr. Portfolio Servicing Specialist
Capital CDC
1250 South Capital of Texas Hwy
Bldg. 1, Suite 600
Austin, TX 78746

# EXHIBIT A

**FFBC Operations, LLC, et al Debtors In Possession**
**Thirteen Week Cash Forecast**
**Budget to Actual by Month**

| Week | Budget Total July | Actual Total July | Budget to Actual Variance | Budget Total August | Actual Total August | Budget to Actual Variance | Budget Total Sept. | Actual Total Sept. | Budget to Actual Variance |
|---|---|---|---|---|---|---|---|---|---|
| Revenue | $ 125,642 | $ 77,030 | $ (48,612) | $ 249,886 | $ 148,795 | $ (101,091) | $ 175,000 | $ 104,767 | $ (70,233) |
| COGS | $ 90,252 | $ 63,537 | $ (26,715) | $ 109,279 | $ 80,178 | $ (29,101) | $ 141,252 | $ 69,784 | $ (71,468) |
| CO2 | $ 4,500 | $ - | $ (4,500) | $ 5,452 | $ 149 | $ (5,303) | $ 10,950 | $ 6,528 | $ (4,422) |
| Labor | $ 27,280 | $ 13,537 | $ (13,743) | $ 24,016 | $ 22,750 | $ (1,267) | $ 20,000 | $ 14,772 | $ (5,228) |
| Raw Materials | $ 38,161 | $ 49,567 | $ 11,406 | $ 49,500 | $ 46,990 | $ (2,510) | $ 64,000 | $ 41,375 | $ (22,625) |
| Royalties | $ 3,238 | $ - | $ (3,238) | $ 3,238 | $ - | $ (3,238) | $ 3,238 | $ - | $ (3,238) |
| Taxes | $ 3,787 | $ 434 | $ (3,353) | $ 13,787 | $ 250 | $ (13,537) | $ 29,778 | $ 3,594 | $ (26,184) |
| Utilities | $ 13,286 | $ - | $ (13,286) | $ 13,286 | $ 10,040 | $ (3,246) | $ 13,286 | $ 3,515 | $ (9,771) |
| Gross Margin | $ 35,390 | $ 13,492 | $ (21,898) | $ 140,607 | $ 68,617 | $ (71,990) | $ 33,748 | $ 34,983 | $ 1,235 |
| Expenses | $ 139,320 | $ 24,238 | $ (115,082) | $ 102,139 | $ 96,022 | $ (6,117) | $ 193,140 | $ 102,426 | $ (90,714) |
| Payroll/Recruiting | $ 32,500 | $ - | $ (32,500) | $ 33,081 | $ 63,496 | $ 30,415 | $ 33,081 | $ 3,234 | $ (29,847) |
| Professional Services | $ 12,000 | $ 501 | $ (11,499) | $ 16,500 | $ 1,461 | $ (15,039) | $ 10,000 | $ 1,000 | $ (9,000) |
| Sales | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Payroll/Recruiting | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| G&A | $ 92,820 | $ 14,737 | $ (78,083) | $ 42,866 | $ 30,665 | $ (12,201) | $ 71,832 | $ 21,865 | $ (49,967) |
| Computer | $ - | $ - | $ - | $ 385 | $ - | $ (385) | $ 385 | $ - | $ (385) |
| Office Supplies | $ 1,000 | $ - | $ (1,000) | $ 2,123 | $ 531 | $ (1,592) | $ 800 | $ - | $ (800) |
| Bank Charges/credit card fees | $ - | $ 210 | $ 210 | $ - | $ 1,499 | $ 1,499 | $ - | $ 2,419 | $ 2,419 |
| Internet/Phone | $ 500 | $ - | $ (500) | $ 500 | $ - | $ (500) | $ 500 | $ 741 | $ 241 |
| Dues/Licenses | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Insurance | $ 12,000 | $ 2,543 | $ (9,457) | $ 7,500 | $ 10,031 | $ 2,531 | $ 3,692 | $ 7,614 | $ 3,922 |
| Postage & Delivery | $ 120 | $ - | $ (120) | $ 216 | $ - | $ (216) | $ 120 | $ - | $ (120) |
| Misc | $ 14,000 | $ 3,000 | $ (11,000) | $ - | $ 7,322 | $ 7,322 | $ 3,000 | $ 3,408 | $ 408 |
| Amex / Other Admin | $ 10,000 | $ - | $ (10,000) | $ - | $ - | $ - | $ 10,000 | $ - | $ (10,000) |
| Travel | $ 1,500 | $ - | $ (1,500) | $ 1,500 | $ 11 | $ (1,489) | $ 1,500 | $ - | $ (1,500) |
| Entertainment | $ 850 | $ - | $ (850) | $ 850 | $ - | $ (850) | $ 850 | $ - | $ (850) |
| Building Maintenance | $ 25,000 | $ 906 | $ (24,094) | $ 15,462 | $ 425 | $ (15,037) | $ - | $ 411 | $ 411 |
| Machine Maintenance | $ 12,000 | $ 5,845 | $ (6,155) | $ 4,692 | $ 1,713 | $ (2,979) | $ 40,000 | $ 1,654 | $ (38,346) |
| Training | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Security | $ 250 | $ - | $ (250) | $ 250 | $ - | $ (250) | $ 250 | $ 196 | $ (54) |
| Equipment Rental | $ 1,500 | $ - | $ (1,500) | $ - | $ 3,105 | $ 3,105 | $ 1,385 | $ 2,761 | $ 1,376 |
| Trash | $ 400 | $ - | $ (400) | $ 806 | $ 750 | $ (56) | $ 400 | $ 338 | $ (62) |
| Spare Parts | $ 2,500 | $ - | $ (2,500) | $ 577 | $ 207 | $ (370) | $ 1,250 | $ - | $ (1,250) |
| Brewery Supplies | $ 3,000 | $ - | $ (3,000) | $ 1,442 | $ 1,361 | $ (81) | $ 1,500 | $ 1,719 | $ 219 |
| Lab Supplies | $ 4,000 | $ - | $ (4,000) | $ 2,385 | $ - | $ (2,385) | $ 2,000 | $ 605 | $ (1,395) |
| Chemicals | $ 3,000 | $ 2,232 | $ (768) | $ 2,692 | $ 2,860 | $ 167 | $ 3,000 | $ - | $ (3,000) |
| Cleaning | $ 1,200 | $ - | $ (1,200) | $ 1,200 | $ 850 | $ (350) | $ 1,200 | $ - | $ (1,200) |
| Marketing | $ 2,000 | $ 1,000 | $ (1,000) | $ 2,000 | $ 400 | $ (1,600) | $ 2,000 | $ 1,400 | $ (600) |
| Taxes | $ - | $ - | $ - | $ 7,692 | $ - | $ (7,692) | $ - | $ - | $ - |
| Payments to Amplify | $ - | $ - | $ - | $ - | $ - | $ - | $ 74,927 | $ 74,927 | $ - |
| Amplify | $ - | $ - | $ - | $ - | $ - | $ - | $ 74,927 | $ 74,927 | $ - |
| SBA | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Bankruptcy / Legal Costs | $ - | $ 8,000 | $ 8,000 | $ - | $ - | $ - | $ 1,300 | $ - | $ (1,300) |
| Utility Deposits (Frost A/C) | $ - | $ 8,000 | $ 8,000 | $ - | $ - | $ - | $ - | $ - | $ - |
| US Trustee Fees | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,300 | $ - | $ (1,300) |
| Legal Counsel (Waller) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Christine Celis Counsel | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Special Counsel | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Financial Advisor (Harney) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Net Cash Flow from Operations | $ (103,930) | $ (10,746) | $ 93,184 | $ 38,468 | $ 13,547 | $ (24,920) | $ (159,392) | $ (67,442) | $ 91,950 |

| Cash Balance: | | |
|---|---|---|
| Beginning Cash | $ 42,746 | $ 42,746 | |
| Net Cash Flow From Operations | $ (159,392) | $ (67,442) | $ 91,950 |
| DIP Financing Advances / (Repayment) | $ 120,000 | $ 120,000 | $ - |
| Ending Cash | $ 3,354 | $ 95,304 | |

| DIP Financing Balance: | | |
|---|---|---|
| Beginning Balance | $ - | |
| DIP Financing Advances / (Repayment) | $120,000 | $120,000 |
| Ending Balance | $ 120,000 | $ 120,000 |

NOTE 1: for September 2019, assumes payment to Amplify and funding of DIP loan of $120,000 on Friday 9/29.

Celis 13 week cash forecast w DIP Financing 2019 09 27

# EXHIBIT B

**Celis Brewery**
*Summary Financial Projections*

| $ in thousands | Forecast 2020 | Forecast 2021 | Forecast 2022 | Forecast 2023 | Forecast 2024 |
|---|---|---|---|---|---|
| **INCOME STATEMENT** | | | | | |
| Celis Beer | 11,037 | 11,037 | 11,631 | 15,027 | 15,452 |
| Contract Brewing | 4,415 | 13,584 | 17,659 | 17,659 | 17,659 |
| Total Barrels Produced | 15,452 | 24,621 | 29,291 | 32,687 | 33,111 |
| | | | | | |
| Celis Beer Distribution | $ 1,204 | $ 1,216 | $ 1,269 | $ 1,384 | $ 1,519 |
| Contract Brewing | 100 | 263 | 427 | 374 | 374 |
| Tap Room & Other | 1,087 | 2,338 | 2,985 | 2,638 | 2,638 |
| Total Sales - $ | 2,391 | 3,816 | 4,681 | 4,395 | 4,531 |
| Cost of Sales | (1,500) | (1,837) | (2,167) | (2,160) | (2,269) |
| Gross Profit | 892 | 1,980 | 2,513 | 2,235 | 2,262 |
| *Gross Profit %* | *37%* | *52%* | *54%* | *51%* | *50%* |
| Salaries & Benefits | (355) | (346) | (361) | (316) | (316) |
| Professional Services | (93) | (91) | (94) | (83) | (83) |
| General & Administrative | (269) | (262) | (274) | (240) | (240) |
| Sales & Marketing | (22) | (21) | (22) | (19) | (19) |
| Property Taxes | (182) | (177) | (185) | (162) | (162) |
| Depreciation & Amortization | (357) | (392) | (392) | (392) | (392) |
| Net Operating Income | (385) | 690 | 1,185 | 1,023 | 1,050 |
| *NOI Margin %* | *-16%* | *18%* | *25%* | *23%* | *23%* |
| Interest | (232) | (222) | (208) | (180) | (152) |
| Taxes | - | (141) | (293) | (253) | (270) |
| Net Income | $ (617) | $ 328 | $ 684 | $ 590 | $ 629 |
| | | | | | |
| **BALANCE SHEET** | | | | | |
| **ASSETS** | | | | | |
| Cash | $ 111 | $ 98 | $ 440 | $ 706 | $ 1,054 |
| Accounts Receivable | 79 | 125 | 154 | 145 | 149 |
| Inventory | 185 | 201 | 226 | 207 | 218 |
| Current Assets | 375 | 424 | 819 | 1,057 | 1,421 |
| PPE, Net | 4,891 | 4,600 | 4,308 | 4,016 | 3,624 |
| Goodwill | | | | | |
| Total Assets | $ 5,266 | $ 5,024 | $ 5,127 | $ 5,073 | $ 5,045 |
| | | | | | |
| **LIABILITIES & EQUITY** | | | | | |
| Accounts Payable | 155 | 181 | 210 | 206 | 215 |
| Accrued Expenses | 15 | 14 | 15 | 13 | 13 |
| Long-Term Debt | 5,214 | 4,618 | 4,007 | 3,370 | 2,704 |
| Total Liablities | 5,383 | 4,813 | 4,233 | 3,589 | 2,931 |
| Common Stock | 500 | 500 | 500 | 500 | 500 |
| Retained Earnings | (617) | (290) | 394 | 984 | 1,613 |
| Total Equity | (117) | 210 | 894 | 1,484 | 2,113 |
| Total Liabilities + Equity | $ 5,266 | $ 5,024 | $ 5,127 | $ 5,073 | $ 5,045 |
| Check | $ - | $ - | $ - | $ - | $ - |
| | | | | | |
| **STATEMENT OF CASH FLOWS** | | | | | |
| Net Income | $ (617) | $ 328 | $ 684 | $ 590 | $ 629 |
| Depreciation & Amortization | 357 | 392 | 392 | 392 | 392 |
| *Changes in Working Capital:* | | | | | |
| Accounts Receivable | (54) | (47) | (29) | 9 | (4) |
| Inventory | (85) | (16) | (25) | 19 | (10) |
| Accounts Payable | 125 | 26 | 29 | (5) | 9 |
| Accrued Expenses | 15 | (0) | 1 | (2) | - |
| Cash Flow from Operations | (259) | 683 | 1,052 | 1,004 | 1,015 |
| Capital Expenditures | (344) | (100) | (100) | (100) | - |
| Proceeds from Asset Sales | | | | | |
| Cash Flow from Investing | (344) | (100) | (100) | (100) | - |
| Debt (Repayments) / Advances | 214 | (596) | (610) | (638) | (666) |
| Equity Infusion / (Distributions) | 500 | | | | |
| Cash Flow from Financing | 714 | (596) | (610) | (638) | (666) |
| Total Cash Flow | $ 111 | $ (13) | $ 342 | $ 266 | $ 349 |
| Beginning Cash Balance | $ - | $ 111 | $ 98 | $ 440 | $ 706 |
| Ending Cash Balance | $ 111 | $ 98 | $ 440 | $ 706 | $ 1,054 |

# EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| FFBC OPERATIONS, LLC, | § | Case No. 19-10869-hcm |
|     d/b/a Celis Brewery | § | |
| *and* | § | |
| | § | |
| FFBC REAL ESTATE, LLC | § | Case No. 19-10870-hcm |
| | § | (*Jointly Administered Under* |
|     Jointly Administered Debtors. | § | *Case No. 19-10869-hcm*) |

## **DEBTORS' JOINT  CHAPTER 11 PLAN OF REORGANIZATION,**

Eric J. Taube
Texas Bar No. 19679350
Mark C. Taylor
Texas Bar No. 19713225
WALLER LANSDEN DORTCH & DAVIS, LLP
100 Congress Avenue, Suite 1800
Austin, Texas 78701
Telephone: (512) 685-0000
Facsimile: (512) 685-6417

ATTORNEYS FOR DEBTORS

# TABLE OF CONTENTS

**ARTICLE I. INTRODUCTION**................................................................................1

**ARTICLE II. DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION OF TERMS**..........................................................................................................1

**ARTICLE III. DESIGNATION OF CLAIMS AND INTERESTS** .........................................7

3.1    Summary. ...............................................................................................7
3.2    Identification of Classes. ..........................................................................7
3.3    Identification of Impaired and Unimpaired Classes. ....................................8
3.4    Impaired Classes Entitled to Vote. ............................................................8
3.5    Impaired Classes Not Entitled to Vote. ......................................................8
3.6    Controversy Concerning Classification, Impairment or Voting Rights. ...........8

**ARTICLE IV. TREATMENT OF UNCLASSIFIED CLAIMS**...............................................8

4.1    Administrative Claims. .............................................................................8
4.2    Allowed Priority Tax Claims. .....................................................................9

**ARTICLE V. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**.....................................................................................................9

5.1    Classified Claims .....................................................................................9

**ARTICLE VII. CONDITIONS PRECEDENT**.............................................................14

7.1    Conditions Precedent to Confirmation. .....................................................14
7.2    Conditions Precedent to Effective Date. ....................................................15

**ARTICLE VIII. PROVISIONS GOVERNING DISTRIBUTIONS**.......................................15

8.1    Distributions Generally. ...........................................................................15
8.2    Distributions on Disputed Claims. .............................................................15
8.3    Delivery of Distributions. .........................................................................16
8.4    Uncashed Checks. ...................................................................................16
8.5    Compliance with Tax Requirements. .........................................................16

**ARTICLE IX. PROVISIONS FOR THE RESOLUTION OF OBJECTIONS TO CLAIMS AND EQUITY INTERESTS** ...................................................................................17

9.1    Objections to Claims or Equity Interests. format ..........................................17
9.2    Amendments to Claims; Claims filed After the Confirmation Date. ...............17

036180-94904/4832-9433-0536.1

**ARTICLE X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**........................18

10.1   Rejection of Executory Contracts. ...................................................................18

**ARTICLE XI. EFFECT OF REJECTION BY ONE OR MORE CLASSES** .....................18

11.1   Impaired Classes to Vote. ...............................................................................18
11.2   Acceptance by Class. ......................................................................................19
11.3   Reservation of Cramdown Rights. ...................................................................19

**ARTICLE XII. EFFECT OF CONFIRMATION** .................................................................19

12.1   Generally. ........................................................................................................19
12.2   Property. ..........................................................................................................19

**ARTICLE XIII. RETENTION OF JURISDICTION** ............................................................19

13.1   Exclusive Bankruptcy Court Jurisdiction. .......................................................19
13.2   Limitation on Jurisdiction. ...............................................................................20

**ARTICLE XIV. MISCELLANEOUS PROVISIONS** ...........................................................20

14.1   Effectuating Documents and Further Transactions. .......................................20
14.2   Severability. ....................................................................................................21
14.3   Final Allowance. ..............................................................................................21
14.4   Consummation. ...............................................................................................21
14.5   Distribution Agent. ..........................................................................................22
14.6   Exemption from Certain Transfer Taxes and Recording Fees. ......................22
14.7   Further Authorization. .....................................................................................22
14.8   Means of Cash Payment. ................................................................................22
14.9   Setoffs. ............................................................................................................23
14.10  Exculpation; Limitation of Liability; and Releases. format ...........................23
14.11  Amendment or Modification of This Plan. .....................................................24
14.12  Severability of Plan Provisions. ....................................................................24
14.13  Revocation, Withdrawal, or Non-Consummation. .........................................25
14.14  Due Authorization by Claimants. ..................................................................25
14.15  Filing of Additional Documentation. ..............................................................25
14.16  Governing Law. .............................................................................................26
14.17  Successors and Assigns. ..............................................................................26
14.18  Notices. .........................................................................................................26
14.19  U.S. Trustee Fees. ........................................................................................27
14.20  Implementation. .............................................................................................27
14.21  No admission. ................................................................................................27
14.22  Conflicts. ........................................................................................................27

FFBC Operations, LLC ("Operations") and FFBC Real Estate, LLC ("Real Estate") (jointly, the "Debtors"), hereby submit this Joint Plan of Reorganization (the "Plan"). A discussion of the Debtors' respective history, business, properties and results of operations, and a summary of this Plan and certain related matters, can be found in the Joint Disclosure Statement (the "Disclosure Statement") filed by the Debtors in support of this Plan.

## ARTICLE I.
## INTRODUCTION

The Debtors propose the following Plan pursuant to the provisions of Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Capitalized terms used in this Plan and not otherwise defined shall have the meanings ascribed to them in Article II of this Plan or, if not defined therein, in Section 101 of the Code.

Reference is hereby made to the Disclosure Statement, which discusses the history of the Debtors and their business, management, assets and liabilities. The Disclosure Statement also provides a summary of this Plan. YOU ARE URGED TO READ THE DISCLOSURE STATEMENT WITH CARE IN EVALUATING HOW THIS PLAN WILL AFFECT YOUR CLAIM(S).

## ARTICLE II.
## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION OF TERMS

For purposes of this Plan, any reference in this Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, supplemented, or otherwise modified.

The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan, unless the context requires otherwise. The word "including" as used in this Plan means "including, without limitation." The word "or" when used in this Plan means "and/or" unless the context

clearly indicates otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter. The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.1.1   **"Administrative Claim"** means a Claim for costs and expenses of administration of the Bankruptcy Cases allowed under sections 503, 507(a)(2) or 507(b) of the Bankruptcy Code and approved by Final Order of the Bankruptcy Court, and all fees and costs assessed against the Estates pursuant to 28 U.S.C. § 1930. The term includes Professional Claims, Post- Petition Tax Claims, and Post-Confirmation Administrative Claims.

2.1.2   **"Allowed"** means with reference to a Claim or any portion thereof (a) a Claim against the Debtor, proof of which, if required, was filed on or before the Bar Date, which is not a Disputed Claim;  (b) an unknown Claim allowed hereunder or by a Final Order or (c) a Claim which has been scheduled by a Debtor and is not listed as "disputed", "contingent" or "unliquidated".. An Allowed Claim does not include any Claim, or portion thereof, which is a Disallowed Claim or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof or pursuant to a Final Order. Unless otherwise specifically provided in this Plan, or by a Final Order of the Court, an Allowed Claim shall not include any amount for punitive or exemplary damages, penalties, fines or post-petition interest.

2.1.3   **"Allowance Date"** means the date on which a claim becomes an Allowed Claim, unless such Claim is "Allowed" solely under clause (b) of the definition of such term, in which case, the Allowance Date shall be no earlier than the day after the last day for filing objections to proofs of Claim under this Plan.

2.1.4   **"Ballot"** means the form(s) distributed to holders of impaired Claims and Equity Interests on which is to be indicated the acceptance or rejection of the Plan.

2.1.5   **"Bankruptcy Cases"** means the jointly administered cases of the Debtors, pending as Case No. 19-10869 and 19-10870, in the United States Bankruptcy Court for the Western District of Texas, Austin Division.

2.1.6   **"Bankruptcy Code"** means title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

2.1.7 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

2.1.8 **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of title 28 of the United States Code, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

2.1.9 **"Bar Date"** means the date set by the Bankruptcy Court as the last day for filing of proofs of Claim in the Bankruptcy Cases, which is November 4, 2019.

2.1.10 **"Books and Records"** means the books and records of the Debtors which are kept by or on behalf of the Debtors in the ordinary course of business, including, without limitation, all engineering reports, architectural plans, site plans and any drafts of the foregoing that relate to the Debtors including its property (whether currently or formerly owned), along with any permits, correspondence, bank accounts, tax records, corporate records, accounting records, software, computers, franchise tax matters and any other records of the Debtors whether in the possession of the Debtors, its manager, officers, directors, shareholders or any accountants, lawyers, brokers or any other Person.

2.1.11 **"Business Day"** means any day which is not a Saturday, a Sunday, or a legal holiday within the meaning of Bankruptcy Rule 9006(a).

2.1.12 **"Claim"** has the meaning set forth in Section 101(5) of the Bankruptcy Code.

2.1.13 **"Claimant"** means the holder of a Claim.

2.1.14 **"Confirmation Date"** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

2.1.15 **"Confirmation Hearing"** means the hearing or hearings which will be held before the Bankruptcy Court under Bankruptcy Code § 1128 at which the Confirmation of this Plan will be requested.

2.1.16 **"Confirmation Order"** means an order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

2.1.17 **"Convenience Claim"** means any General Unsecured Claim that is (a) Allowed in an amount of five hundred dollars ($500) or less or (b) Allowed in an amount greater than five hundred dollars ($500) but which is reduced to five thousand dollars ($500) by an irrevocable written election by the holder of such Allowed Claim made on a properly delivered Ballot; provided, however that (1) any Claim that was Allowed in excess of five hundred dollars ($500) may not be subdivided into multiple Claims of five hundred dollars ($500) or less for purposes of receiving treatment as a Convenience Claim, and (2) Claims in the same Class held by a Claimant shall be aggregated for purposes of determining whether such Claims are eligible to be Convenience Claims.

2.1.18 "**Debtors**" has the meaning set forth in the preamble to this Plan.

2.1.19 "**Deficiency Claim**" means any portion of a Claim (i) to the extent the value of the holder's interest in the property securing such Claim is less than the amount of such Claim or (ii) to the extent the amount of a Claim is subject to setoff is less than the amount of the Claim, each as determined by Section 506(b) of the Bankruptcy Code.

2.1.20 "**Disallowed Claim**" means a Claim or portion thereof that (i) has been disallowed by a Final Order; or (ii) was not filed by the Bar Date.

2.1.21 "**Disclosure Statement**" means the Disclosure Statement with respect to this Plan, as approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on and confirmation of this Plan, as such Disclosure Schedule may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

2.1.22 "**Disposition**", "**Disposed of**" and other forms of the word "**Dispose**", when capitalized herein, refer to the sale, transfer, or other hypothecation of an asset to a person other than the Debtor.

2.1.23 "**Disputed Claim**" means a Claim, or any portion thereof, that is set forth in a filed Proof of Claim (a)that differs in nature, amount or priority from the Bankruptcy Schedules, or (b) that is the subject of an objection filed by the Debtor or any other party-in-interest and which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court; provided, however, that with respect to an Administrative Claim, "Disputed Claim" means an Administrative Claim that is not an Allowed Claim or a Disallowed Claim.

2.1.24 "**Disputed Claims Reserves**" means the reserve account established pursuant to this Plan.

2.1.25 "**Distribution**" means a distribution of money or property pursuant to the provisions of this Plan.

2.1.26 "**Distribution Agent**" shall be the person designated by the Debtor to make distributions under the Plan. With respect to Administrative, Priority Tax/Secured Claims and Allowed Secured Claims, the Reorganized Debtors shall act as the Distribution Agent

2.1.27 "**Distribution Date**" means any date on or after the Effective Date on which distributions of Available Cash should be made pursuant to this Plan.

2.1.28 "**Effective Date**" means the first Business Day following thirty days from confirmation of the Plan.

2.1.29 "**Equity Interest**" means any ownership interest or share in the Debtors (including, without limitation, all options, warrants or other rights to obtain such an interest or share in the Debtors) whether or not transferable, preferred, common, voting, or denominated "stock" or a similar security.

2.1.30 **"Estate"** means, as to each Debtor, the estate created for such Debtor pursuant to section 541 of the Bankruptcy Code.

2.1.31 **"Estate Causes of Action"** means any and all rights, claims and causes of actions which the Debtor or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statute or the avoidance statutes of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551 and 553.

2.1.32 **"Exculpated Party" or "Exculpated Parties"** means the Debtors and their agents, officers, directors, managers, employees, representatives, attorneys, advisors affiliates, shareholders, or members, or any of their successors or assigns

2.1.33 **"Executory Contract"** means, collectively, "executory contracts" and "unexpired leases" of the Debtors as of the Petition Date, as such terms are used in section 365 of the Bankruptcy Code.

2.1.34 **"Final Decree"** means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

2.1.35 **"Final Order"** means an order or judgment (a) as to which time to appeal, petition for certiorari or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for re-argument or rehearing shall then be pending; or (b) in the event an appeal, writ of certiorari, or motion for re-argument or rehearing has been filed or sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which a motion for re-argument or rehearing was sought, and the time to take any further appeal, petition for certiorari, or move for re-argument or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a Final Order solely because of the filing or pendency of a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure unless such motion shall have been filed within ten (10) days of the entry of the order or judgment at issue.

2.1.36 **"General Unsecured Claim"** means any Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, or a Convenience Class Claim and shall include any Claim arising from the rejection of an Executory Contract pursuant to 11 U.S.C. § 365.

2.1.37 **"Governmental Unit"** means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

2.1.38 **"Lien"** means a valid and enforceable lien, mortgage, security interest, pledge, charge, encumbrance, or other legally cognizable security device of any kind.

2.1.39 **"Notice of the Effective Date"** has the meaning given such term in Section 7.3.

2.1.40 **"Notice Parties"** means the Trustee, the Debtors, the Debtors' counsel, the United States Trustee, Amplify Credit Union ("Amplify"), the Small Business Administration ("SBA") and all persons requesting notice in the Bankruptcy Case.

2.1.41 **"Ordinary Course of Business"** shall have the meaning provided under 11 U.S.C. § 363 and judicial interpretations thereof.

2.1.42 **"Person"** means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

2.1.43 **"Petition Date"** means July 1, 2019.

2.1.44 **"Plan"** means this joint chapter 11 Plan, either in its present form or as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

2.1.45 **"Plan Agent""** means the person designated by the Debtors at the hearing on approval of the Disclosure Statement or such other person as may be approved by the Bankruptcy Court as the Agent for the purpose of pursuing claims available and owned by the Debtors for the benefit of Class 7 General Unsecured Creditors.

2.1.46 **"Plan Supplement"** means all documents, forms, lists, and agreements contemplated under the Plan to effectuate the terms and conditions hereof.

2.1.47 **"Post-Petition Tax Claims"** has the meaning set forth in Section 4.1(c)(iii).

2.1.48 **"Priority Claim"** means a Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim or a Priority Tax Claim.

2.1.49 **"Priority Tax Claim"** means a Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

2.1.50 **"Pro Rata Share"** means, with respect to any distribution to a Class under this Plan, as of any particular Distribution Date, proportionate sharing pursuant to which (a) the ratio that the cumulative amount of all funds distributed or reserved on account of each Claim in such Class bears to the amount of such Claim is equal to (b) the ratio that the cumulative amount distributed or reserved on account of all Claims in such Class bears to the total amount of all Claims in such Class that are entitled to receive a distribution or against which a reserve is required to be made.

2.1.51 **"Professional"** means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

2.1.52 **"Professional Claim"** means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Cases.

2.1.53 "**Schedules**" means the Schedules and Statement of Financial Affairs filed by the respective Debtor with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

2.1.54 "**Secured Claim**" means any Claim or portion thereof against the Debtors that is reflected in a proof of Claim or otherwise asserted as secured by a perfected Security Interest in, or Lien on, any property of the Debtor, or the net proceeds from the sale of such property, in which a Debtor has an interest, to the extent of the value, as of the Petition Date (or such other date as is established by the Bankruptcy Court) of such security interest or Lien as determined by a non-appealable Final Order pursuant to section 506 of the Bankruptcy Code or as otherwise agreed in writing by the holder of such Claim and (i) the Debtor (if such agreement is effectuated prior to the Effective Date), (ii) the Reorganized Debtor or Liquidating Trustee (if such agreement is effectuated on or after the Effective Date); or (iii) a Setoff Claim.

2.1.55 "**Security Interest**" has the meaning ascribed to such term in section 101(51) of the Bankruptcy Code.

2.1.56 "**Senior in Priority**" means, as to any of the following Classes or categories of unsecured Claims, classes or categories that have a higher priority, in the following descending order: (a) first, Administrative Claims; (b) second, Priority Tax Claims; and (c) third, General Unsecured Claims.

2.1.57 "**Substantial Consummation**" means the accomplishment of the transactions required under Article VII of this Plan, in accordance with Bankruptcy Code § 1101(2).

## ARTICLE III.
## DESIGNATION OF CLAIMS AND INTERESTS

3.1 **Summary.**

(a) Pursuant to Bankruptcy Code section 1122, a Claim or Equity Interest is placed in a particular Class for purposes of voting on this Plan and receiving Distributions under this Plan only to the extent (i) the Claim or Equity Interest qualifies within the description of that Class; and (ii) the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class.

(b) A Claim or Equity Interest which is not an Allowed Claim or Allowed Equity Interest is not in any Class, and notwithstanding anything to the contrary contained in this Plan, no Distribution shall be made on account of any Claim or Equity Interest which is not an Allowed Claim or Allowed Equity Interest.

3.2 **Identification of Classes.**

1) Class 1: Administrative
2) Class 2: Priority Tax/Secured Claims
3) Class 3: Allowed Secured Claim of Amplify
4) Class 4: Allowed Secured Claim of SBA

5) Class 5: Allowed Secured Claim of Pedernales Brewing Co
6) Class 6: Celis Phoenix, LLC
7) Class 7: Allowed General Unsecured
8) Class 8: Allowed Convenience Class Claims
9) Class 9: Allowed claim of The Blue River Fox
10) Class 10: Allowed Claim Hill Morrison, Inc.
11) Class 11: Equity Interests

3.3 **Identification of Impaired and Unimpaired Classes.**
All classes of claims are impaired except Class 1, 2 and 9.

3.4 **Impaired Classes Entitled to Vote.**
All classes of claims are entitled to vote except Classes 1, 2 and 9.

3.5 **Impaired Classes Not Entitled to Vote.**
Class 11

3.6 **Controversy Concerning Classification, Impairment or Voting Rights.**

In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Claimant under this Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes (i) the amount of any contingent or unliquidated Claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of these Bankruptcy Cases; and (ii) any right to payment arising from an equitable remedy for breach of performance. In addition, the Bankruptcy Court may, in accordance with section 506(b) of the Bankruptcy Code, conduct valuation hearings to determine the Allowed amount of any Secured Claim.

## ARTICLE IV.
## TREATMENT OF UNCLASSIFIED CLAIMS

4.1 **Administrative Claims.**

(a) **General:** Subject to the subsection 4.1(c), unless otherwise agreed to by such holder, on each Distribution Date, each holder of an Allowed Administrative Claim shall receive from the Distribution Agent an amount equal to the (1) Allowed Administrative Claim or (2) such amount as may be agreed to between the holder of such claim and the Debtor.

(b) **Payment of Statutory Fees:** All fees payable pursuant to 28 U.S.C. §1930 shall be paid in cash, when due.

(c) **Bar Date for Administrative Claims:**

(i)     **General Provisions:** Except as otherwise provided in this Article IV, requests for payment of Administrative Claims must be included within a motion or application and filed no later than forty-five (45) days after the Effective Date or by such earlier deadline governing a particular Administrative Claim contained in an order of the Bankruptcy Court entered before the Effective Date. Holders of Administrative Claims who do not file such requests by the applicable bar date specified in this subsection shall be forever barred from asserting such Claims against the Debtors or any of their respective property. Requests for payment of Administrative Claims included within a proof of claim are of no force and effect, and are disallowed in their entirety as of the Confirmation Date unless such Administrative Claim is subsequently filed in a timely fashion as provided herein.

(ii)     **Professionals:** All professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any professional or any other entity for making a substantial contribution in the Debtors' Bankruptcy Cases) shall file and serve on the Notice Parties an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. Objections to applications of professionals for compensation or reimbursement of expenses must be filed and served on the Notice Parties and the professionals to whose application the objections are addressed no later than twenty-one (21) days after the date on which the application for allowance is served.

(iii)     **Post-Petition Tax Claims:** All requests for payment of Administrative Claims and other Claims by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, which accrued or wer assessed within the period from and including the Petition Date through and including the Effective Date ("**Post-Petition Tax Claims**") and for which no bar date has otherwise been previously established, must be filed on or before the later of (i) forty-five (45) days following the Effective Date; and (ii) ninety (90) days following the filing with the applicable Governmental Unit of the tax return for such taxes for such tax year or period. Any holder of any Post-Petition Tax Claim that is required to file a request for payment of such taxes and does not file such a Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtor or their property, whether any such Post- Petition Tax Claim is deemed to arise prior to, on, or after the Effective Date..

4.2     **Allowed Priority Tax Claims.**

On the Effective Date each holder of an Allowed Priority Tax Claim shall receive from the Distribution Agent, an amount equal the then-unpaid Allowed amount of such Priority Tax Claim.

# ARTICLE V.
# CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

5.1     **Classified Claims**

5.01     Class I – Administrative Claims. Each holder of an Allowed Administrative Claim shall receive from the Debtor with respect to such Allowed Claim, either (i) the amount of such

Allowed Claim from the Debtor, in one (1) cash payment on the later of (a) the Effective Date, (b) the date that is sixty (60) days after a request for payment of the Claim is filed, (c) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

Applications for compensation and reimbursement filed by professionals employed under §327 of the Bankruptcy Code or otherwise employed by order of the Bankruptcy Court shall be filed no later than forty five (45) days after the Effective Date. All other requests for payment of Administrative Claims (or any other means of preserving and obtaining payment of Administrative Claims found to be effective by the Bankruptcy Court) shall be filed by the earlier of (i) thirty (30) days after the date of service of notice of the Effective Date, or (ii) any applicable bar date established by the Bankruptcy Court and noticed separately by the Debtor, and if no timely request for payment of Administrative Claim is received, such claims shall be forever barred and shall not be assertable in any manner against the Debtor or the estate provided, no request for payment shall be required with respect to Administrative Claims that have been paid previously or with respect to Administrative Claims representing liabilities incurred in the ordinary course of business, unless a dispute exists as to any such liabilities or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on any such liability. This class is unimpaired.

5.02    Class II – Priority Tax/Secured Claims. Each holder of a Class II Secured Tax Claim, if any exist, shall receive payment of its Allowed Claim, in full, within sixty (60) months from the Petition Date, with statutory interest accruing form the Petition Date, in equal monthly payments beginning sixty (60) days from the Effective Date. Further, the Travis County Taxing Authorities shall not be required to file any requests for payment of postpetition taxes under Plan Paragraph 4.1(c)(iii).

In the event of a payment default in payment of the Class II Allowed Claim, the Holder of the Class II Allowed Claim shall provide notice of default, and twenty (20) days' opportunity to cure, to the Debtors, with a copy to Amplify and the SBA. Such claim is unimpaired.

5.03    Class III – Secured Claim of Amplify. The Class III claim of Amplify is fully secured and will be reinstated and modified. Amplify will maintain and retain all pre-petition collateral and all collateral granted to it pursuant to post-petition orders of the Court. The Class III claim of Amplify shall be paid interest only monthly for the first six months following the Effective Date and amortized for 300 months thereafter. with a ten (10) year balloon maturity. The interest rate shall be four percent (4%) for the first year, four and one quarter percent (4.25%) for the second year, four and one half percent (4.5%) for the third year and the existing contract of the Amplify notes thereafter. In addition to the collateral described above, the Amplify Class III claim will be secured by trademark and intellectual property owned by Copper Kettle, LLC. The existing guaranty of Christine Celis shall be released and new guarantees executed by parties who own

more than 20% of the reorganized Debtors. The Reorganized Debtor will execute new loan documentation acceptable to Amplify to reflect the obligations. . Such claim is impaired.

5.04    Class IV – Secured Claim of the SBA.  The Allowed Secured Claim of the SBA shall be in an amount equal to the value of the collateral that secures the obligations owed by the Debtors to the SBA, which is subordinate to the liens and security interests of Amplify. Unless determined by the Bankruptcy Court to be a different amount under 11 U.S.C. §506, such Allowed Class IV claim shall be $800,000. Any amounts owed to the SBA, shall be treated as Class VII, general unsecured claims. The Allowed Class IV claim of the SBA shall be secured by a lien on all pre-petition collateral and all collateral granted to the SBA pursuant to post petition orders of the Court. All liens shall be inferior to the liens in favor of Amplify. The Allowed Class IV claim shall be paid quarterly, interest only for the first six months and fully amortized over 300 months. Interest will be accrue and be payable at four percent (4%) for the first year after the Effective Date, at the rate of four and one quarter percent (4.25%) for the second year; four and one half percent (4.5%) for the third year and at the existing contract rate thereafter.  Additionally, the SBA Class IV secured claim shall be secured by trademark and intellectual property owned by Copper Kettle, LLC inferior to the lien of Amplify. The existing guaranty of Christine Celis shall be released upon the pledge by Copper Kettle, LLC. Such claim is impaired

5.05    Class V – Claim Pedernales Brewing Company.  The Allowed Secured Claim of Pedernales Brewing Company shall be equal to the value of the collateral securing the Claim and shall be paid in full over twenty four months with interest at 4%, with the first payment to begin on the 30th day after the Effective Date. The balance of the claim owed to Pedernales Brewing Company shall be treated as an unsecured claim in Class VII. Such claim is impaired.

5.06    Class VI – Secured Claim of Celis Phoenix, LLC.  The pre-petition secured claim and the post-petition secured claim of Celis Phoenix, LLC as DIP Lender shall be fully satisfied by the conversion of all such debt to 100% ownership of the equity in the reorganized Debtors. Such claim is impaired.

5.07    Class VII – General Unsecured Creditors.  Holders of Allowed  General Unsecured Claims will receive pro-rata distributions from amounts contributed by Celis Phoenix in the amount of $200,000 in the aggregate and after payments to Class II payments have been made. Such payments shall be made by the reorganized Debtor monthly for up to 60 months at the same time that Class II creditors are paid. In addition, Class VII Allowed Claims will be paid on a pro-rated basis from recoveries obtained by the Plan Agent from the prosecution of Chapter 5 claims and any other litigation claims belonging to the Debtors. The Debtors and/or Celis Phoenix shall fund an initial $25,000 to the Plan Agent for collection activities of such claims.  This class is impaired.

5.08    Class VIII – Convenience Class Unsecured Creditors. Holders of Allowed General Unsecured Claimswhose claims are at or below $500 or who agree to limit their claims to $500 will be permitted, at their sole option, to elect to receive 100 of their Allowed Claim in two (2) equal monthly payments on the 30th and 60th day following the Effective Date. The election will be made at the time of voting on the Debtors' Plan. This Class is impaired.

5.09    Class IX – Blue River Fox Secured Claim. Blue River Fox has filed a secured claim, which Debtors assert is not secured under 11 U.S.C. § 506. Debtor intends to object to the secured claim filed by Blue River Fox. In the event that Blue River Fox has an allowed secured claim, such claim is subordinated to each of the claims of the SBA and Amplify, and will receive the same treatment provided to the SBA to the extent of the value of the collateral securing the Blue River Fox claim after each of the Amplify and SBA Allowed Secured Claim is paid in full. This Class, to the extent it exists at all, is unimpaired.

5.10    Class X – Claim of Hill Morrison, Inc. Hill Morrison has filed a secured claim against real estate owned by FFBC Real Estate, LLC, which Debtor believes is not allowable under 11 U.S.C. § 506. Debtor intends to object to the secured portion of such claim. Debtor believes that the entirety of the Hill Morrison claim will be treated in Class VII. In the event that the Court determines that there is value to the secured claim of Hill Morrison, such claim is subordinated to the claim of Amplify and the SBA and shall be paid in full after the claims of the SBA and Amplify are fully paid. This Class, to the extent it exists at all, is impaired.

5.11    Class XI - Equity Interests. Existing Equity Interests shall be canceled, and new equity shall be issued to Celis Phoenix, LLC or an entity designated by it, in return for the satisfaction of the DIP loan made to Debtors post-petition, the cash payments provided herein, and to commitment to fund up to $1,000,000.00 of cash in to the reorganized Debtors in order to make payments under this Plan.

5.12    Payments to U.S. Trustee. Debtor shall make the payments and file all reports required by 28 U.S.C. § 1930(a)(6) until the Bankruptcy Case is closed, converted or dismissed.

## ARTICLE VI.
## MEANS FOR IMPLEMENTING PLAN

A.    On the Effective Date, property will re-vest in the Reorganized Debtor.

B.    **Sources of Payments**: - Payments under this Plan will be made from a combination of money generated from the pre and post- confirmation operations of FFBC Operations, contributions from Celis Phoenix of up to an additional $1,000,000 for the purposes of meeting operating costs and making payments under this Plan.

C.    **Treatment of Executory Contracts and Unexpired Leases**

(1) **Assumption or Rejection of Executory Contracts and Unexpired Leases**. On the Effective Date, except as otherwise provided in the Plan and in Exhibit A (List of Contracts to be Assumed - see 10.1 hereof), any unexpired lease or executory contract that has not been previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court shall be deemed rejected by the Debtors under Sections 365(a) and 1123 of the Bankruptcy Code, other than those executory contracts and unexpired leases that are (a) listed on exhibit to be filed fourteen (14) days prior to the Confirmation hearing s(as such list may be amended, supplemented or modified on or before the Confirmation Date) or (b) subject to a motion to reject that is pending on the Effective Date. Entry of the Confirmation Order shall constitute approval of such assumptions, and the rejection of the executory contracts or unexpired leases listed in the exhibit to be provided at the confirmation hearing hereto (as such list may be amended, supplemented or modified on or before the Confirmation Date), pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

(2) **Objections to Assumption and Assignments of Executory Contracts and Unexpired Leases**. To the extent that any party to an executory contract or unexpired lease identified for assumption, or any other party in interest, (a) asserts arrearages or damages pursuant to § 365(b)(1) of the Bankruptcy Code in an amount different from the amount, if any, set forth in Exhibit A (b) has any objection to the proposed adequate assurance of future performance, if required, or (c) has any other objection to the proposed assumption, cure, or assignment of a particular executory contract or unexpired lease on the terms and conditions provided for herein, all such asserted arrearages and any other objections shall be filed and served within the same deadline and in the same manner established for filing objections to Confirmation.

Failure to assert any arrearages different from the amount set forth in Exhibit A, or to file an objection within the time period set forth above, shall constitute consent to the assumption, cure, and assignment on the terms provided for herein, including acknowledgment that (a) the Debtor (or its assignee) has provided adequate assurance of future performance, if required, (b) the amount identified for "cure," if any, is the amount necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the executory contract or unexpired lease to be assumed, and (c) no other defaults exist under such executory contract or unexpired lease.

If an objection to assumption and assignment is filed based upon lack of adequate assurance of future performance or otherwise, and the Court determines that the Debtor cannot assume the executory contract or unexpired lease either as proposed or as may be proposed pursuant to a modified proposal submitted by the Debtors, then the unexpired lease or executory contract shall automatically thereupon be deemed to have been rejected

(3) **Payments Related to Assumption of Executory Contracts and Unexpired Leases**. Any monetary defaults, including claims for actual pecuniary loss, under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed by

the parties, or as ordered by the Bankruptcy Court in Cash within 90 days following the Effective Date, or on such other terms as may be agreed to by the parties to such executory contract or unexpired lease. In the event of a dispute regarding (a) the amount of any cure or pecuniary loss payment, (b) the ability of Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure or pecuniary loss payments required by § 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following entry of a Final Order resolving the dispute and approving assumption.

(4)     **Bar Date for Rejection Damages.**  If the rejection of an executory contract or unexpired lease pursuant to Article 8 of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is a Allowed Claim, shall be classified in Class 8; provided, however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against a Debtor, Reorganized Debtor, their successors or properties, unless a proof of Claim is filed and served on the Reorganized Debtor within 30 days after the date of the notice of the entry of an order of the Bankruptcy Court authorizing rejection of the executory contract or unexpired lease, which order may be the Confirmation Order.

(a)     **Contracts to be Assumed**. Debtors are not required to designate contracts to be assumed or rejected until confirmation, but will provide a list of contracts to be assumed and rejected no later than fourteen (14) days prior to the Confirmation Hearing.

(b)     **No Admission**. The listing by the Debtors of any contract or lease as an "executory contract" cannot be construed as an admission that such contract or lease is actually an executory contract under 11 U.S.C. §365 and shall not be a binding admission against the Debtors or Reorganized Debtors.

### D.     Final Reporting; Closure of Case.

When all Disputed Claims against the Debtors have become Allowed Claims or have been disallowed by Final Order and Substantial Consummation has been achieved, or at such earlier time as the Debtor deem appropriate, the Debtor shall file a final accounting with the Bankruptcy Court, together with a final report, and shall seek authority from the Bankruptcy Court to close the Bankruptcy Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### ARTICLE VII.
### CONDITIONS PRECEDENT

### 7.1     Conditions Precedent to Confirmation.

This Plan shall not be confirmed unless and until the Bankruptcy Court has entered the

Confirmation Order in a form and substance satisfactory to the Debtors in their sole discretion.

7.2 **Conditions Precedent to Effective Date.**

This Plan shall not become effective and operative unless and until the Effective Date occurs. The Effective Date shall occur after the following conditions have been satisfied; provided, however, that the Debtor in their sole discretion may waive any or all of the following conditions, whereupon the Effective Date shall occur without further action by any Person:

(a) the Confirmation Order shall have been entered by the Bankruptcy Court and shall not be subject to a stay; and

(b) the Bankruptcy Court shall have determined that the Debtor are duly authorized to take actions contemplated in the Plan; and

(c) all other agreements contemplated by, or entered into pursuant to the Plan, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

(d) Copper Kettle LLC has contributed a license and Intellectual Property Agreements to the Reorganized Debtors and those interests have been pledged to Amplify and the SBA as provided herein.

## ARTICLE VIII.
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1 **Distributions Generally.**

Distributions contemplated by the Plan shall be made by the Distribution Agent on the Effective Date or such other date as specified in the Plan.

8.2 **Distributions on Disputed Claims.**

In the event of a Distribution to holders of Claims in a class or category in which there exist any Disputed Claims, the Distribution Agent shall, in lieu of making such distribution to the holder of the Disputed Claim, make the distribution into the Disputed Claims Reserve, where it will be held pending Allowance or disallowance of such Disputed Claim. The amount paid into the Disputed Claims Reserve with respect to such Disputed Claim shall be the amount that would be distributed to the holder if such Disputed Claim were Allowed in the lesser of (a) the amount stated in the proof of claim filed by the holder of such Disputed Claim, or (b) the estimated amount

of such Disputed Claim, as determined by order of the Bankruptcy Court. Unless otherwise specifically set forth in this Plan or the Confirmation Order, no holder of a Disputed Claim shall be entitled to receive interest on any amounts deposited into the Disputed Claims Reserve, irrespective of whether the Distribution Agent receives such interest on the amounts so deposited.

### 8.3    Delivery of Distributions.

Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims will be made by mail (1) at the address of each such holder as set forth on the proofs of claim filed by such holders, or (2) at the address reflected in the Schedules filed by the Debtors if no proof of claim is filed. If any Distribution is returned as undeliverable, the Distribution Agent shall use reasonable efforts to determine such Claimant's then current address. After reasonable efforts, if the Distribution Agent still cannot determine such Claimant's then-current address, no further Distributions shall be made to such Claimant unless and until the Distribution Agent is notified of such Claimant's then-current address. If the current address of a Claimant entitled to a Distribution has not been determined within six (6) months of the date on which the Distribution was first attempted to be made, then such Claimant: (i) shall no longer be a Claimant; and (ii) shall be deemed to have released such Claim.

### 8.4    Uncashed Checks.

Checks issued in respect of Allowed Claims will be null and void if not negotiated within ninety (90) days after the date of issuance thereof, and such Claimant will forfeit its right to such Distribution. In no event shall any funds escheat to the State of Texas.

### 8.5    Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Distribution Agent shall comply with all withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.

## ARTICLE IX.
## PROVISIONS FOR THE RESOLUTION OF OBJECTIONS
## TO CLAIMS AND EQUITY INTERESTS

### 9.1    Objections to Claims or Equity Interests. format

Notwithstanding the occurrence of the Effective Date, and except as to any Claim that

has been Allowed before the Effective Date including any order of the Bankruptcy Court pursuant to §506 of the Bankruptcy Code, the Reorganized Debtor may object to the Allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code. All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 60 days after the Effective Date, but the Bankruptcy Court may approve a later date on the Reorganized Debtor's motion filed (but not necessarily heard) before the first Business Day that is 60 days after the Effective Date. Debtor may contest the amount of attorney's fees and interest sought by any creditor. ***Debtor reserves the right to object to or seek estimation of any claims. A VOTE FOR THE PLAN WILL NOT EXCULPATE OR EXCLUDE ANY CLAIMANT FROM HAVING ITS CLAIM OBJECTED TO OR BE DEEMED AN ALLOWANCE OF SUCH CLAIM.***

Prior to the expiration of thirty (30) days from the date of service of the objection, the

Claimant whose Claim or Equity Interest was the subject of the objection must file with the

Bankruptcy Court and serve a response to the objection upon the party who filed such objection,

the Chapter 11 Trustee and the Debtor. Failure to file and serve such a response within the thirty

(30) days shall cause the Bankruptcy Court to grant the relief requested in the objection.

### 9.2    Amendments to Claims; Claims filed After the Confirmation Date.

Except as otherwise provided in this Plan, a Claim may not be filed with the Bankruptcy

Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy

Court. Except as otherwise provided in this Plan, any new or amended Claim filed without the

prior approval of the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in

full and expunged without any action by any person.

## ARTICLE X.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1  Rejection of Executory Contracts.

Any and all Executory Contracts of the Debtor which, as of the Effective Date, have not

been assumed or rejected, shall be deemed rejected except as may be scheduled on Exhibit A - List

of Executory Contracts to be Assumed attached hereto as Exhibit A (as may be amended and

modified by the Debtors prior to confirmation).. Any Claim arising out of the rejection of an

Executory Contract shall be filed and served on counsel for the Debtors within thirty (30) days

from the Effective Date.  Any such Claims not filed by such date shall be discharged and forever

barred.  All creditors and parties in interest shall be authorized to file an objection to any proof of

Claim based on the rejection of an Executory Contract pursuant to this Plan.  The objection to any

such proof of Claim shall be filed not later than one hundred and twenty days (120) after the

Effective Date.  Each Allowed Claim arising from the rejection of an Executory Contract shall be

treated as an Allowed Class VII Claim.

## ARTICLE XI.
## EFFECT OF REJECTION BY ONE OR MORE CLASSES

### 11.1  Impaired Classes to Vote.

Each impaired class shall be entitled to vote separately to accept or reject this Plan. A

holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on this

Plan may vote only in an amount equal to the portion, if any, of such Claim shown as fixed,

liquidated, and undisputed in the applicable Debtor's Schedules. The Debtor reserve the right to

request that the Bankruptcy Court estimate the amount of any Claim for purposes of voting on the

Plan.

11.2 **Acceptance by Class.**

A class of Claims shall have accepted this Plan if this Plan is accepted by at least two thirds (2/3) in amount and more than one half (1/2) in number of the Allowed Claims of such class that have voted to accept or reject this Plan.

11.3 **Reservation of Cramdown Rights.**

In the event that any impaired class shall fail to accept this Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserve the right to request that the Bankruptcy Court confirm this Plan in accordance with the provisions of the section 1129(b) of the Bankruptcy Code.

### ARTICLE XII.
### EFFECT OF CONFIRMATION

12.1 **Generally.**

As of the Confirmation Date, this Plan shall be binding upon the Debtors, all Claimants, and all other Persons who are affected in any manner by this Plan, subject to the occurrence of the Effective Date and the satisfaction or waiver of the conditions set forth in Article VII.

12.2 **Property.**

All property of the Estate will vest in the Reorganized Debtor on the Effective Date.

### ARTICLE XIII.
### RETENTION OF JURISDICTION

13.1 **Exclusive Bankruptcy Court Jurisdiction.**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have such jurisdiction over the Bankruptcy Case as is legally permissible, including, without limitation, for the following purposes:

(a) To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of, or to estimate, any Claim or Equity Interest, including, without limitation, resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of claims or interests;

(b)     To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of this Plan, including, without limitation, any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

(c)     To ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(d)     Except as otherwise provided in this Plan, to enter orders approving any requests for compensation for professional services rendered and costs incurred in connection with these bankruptcy proceedings or in connection with this Plan and incident to these bankruptcy proceedings;

(e)     To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan or any person's obligations in connection with this Plan;

(f)     To consider and act upon the compromise and settlement of any claim or cause of action by or against the Debtors;

(g)     To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtor that may be pending on the Effective Date or that may be brought by the Debtor after the Effective Date, including claims arising under Chapter 5 of the Bankruptcy Code;

(h)     To issue orders in aid of execution and implementation of this Plan to the extent authorized by 11 U. S.C. § 1142 or provided by the terms of this Plan;

(i)     To decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation or consummation of this Plan; and

(j)     To enter an order closing the Bankruptcy Case.

### 13.2   **Limitation on Jurisdiction.**

In no event shall the provisions of this Plan be deemed to confer the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

### ARTICLE XIV.
### MISCELLANEOUS PROVISIONS

### 14.1   **Effectuating Documents and Further Transactions.**

The Debtors and, after the Effective Date, Reorganized Debtors are authorized, required and directed to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be reasonably necessary or

appropriate to effectuate, implement and consummate the Plan without any further evidence of the terms and conditions of the Plan, the Reorganized Debtors will be heretofore and without any further need of court orders deemed to be authorized to execute any of the aforesaid documents or agreements or to take any of the aforementioned steps to confirm, implement and consummate the Plan. The Plan will be binding upon the Debtors, the holders of Claims, and the holders of Equity Interests; and the Court may issue such orders in aid of consummation of the Plan under sections 105 and 1142 of the Bankruptcy Code.

### 14.2  **Severability.**

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

### 14.3  **Final Allowance.**

Notwithstanding anything contained above, all distributions to Classes under this Plan will only be made after the creditors in said Classes have their Claims fully fixed and allowed by the Court. However, objections on claims in one Class will not preclude distribution to creditors in other Classes where no disputes exist regarding Claims in the other Classes.

### 14.4  **Consummation.**

Upon completion of all payments and all transactions contemplated by this Plan, the Plan shall be deemed fully consummated, and this case shall be closed. Until substantial consummation occurs, the Debtor may move for and be granted modifications of this Plan.

14.5    **Distribution Agent.**

The Reorganized Debtors shall act as disbursing agent under the Plan.. . The rights and duties of the Debtors shall be transferred to the Debtors after Confirmation, so that the Debtors will receive all rights for the Debtors and be imbued and granted all the rights of a trustee in bankruptcy to pursue causes of action after Confirmation.

14.6    **Exemption from Certain Transfer Taxes and Recording Fees.**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtors, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property, will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.

14.7    **Further Authorization.**

The Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

14.8    **Means of Cash Payment.**

Payments of Cash made pursuant to this Plan shall be made, at the option and sole discretion of the Debtors, by checks drawn on, or wire transfer from, a domestic bank selected by the Debtors.

14.9    **Setoffs.**

The Debtors may, pursuant to applicable law, but shall not be required to, set off against any Claim the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Debtors may have against the holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtors or the Debtors may have against such holder.

14.10   **Exculpation; Limitation of Liability; and Releases. format**

None of the Debtors, Reorganized Debtors, its counsel, Celis Phoenix or its counsel, or any other party in interest, or any of their respective members or former partners, general partners, members, agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, shall be liable to any party who was served with a copy of the confirmation order prior to its entry by the Bankruptcy Court for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan (the "Chapter 11 Activities"), except for their acts or omissions constituting willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction, and in all respects are entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in connection with the Chapter 11 Activities. No holder of a Claim, or any other party in interest, including their respective agents, employees, representatives, financial advisors, attorneys or affiliates, have any right of action against the Debtors, the Reorganized Debtors, their counsel, Celis Phoenix, LLC or its counsel, for any act or omission in connection with the Chapter 11 Activities, except for their acts or omissions constituting willful misconduct or gross negligence as finally determined by a court of competent jurisdiction. Nothing herein shall be construed to

release any members of Flemish Fox Brewery & Craftworks, LLP, FFBC, LP, FFBC Family, LLC, **except as may be specifically provided in this Plan,** from their guarantees or other obligations or claims, and such claims are fully retained for the purpose of this Plan .

### 14.11  Amendment or Modification of This Plan.

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtor reserve the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date, including, without limitation the right to withdraw the Plan. A holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

### 14.12  Severability of Plan Provisions.

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, upon the request of the Debtor to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.13 **Revocation, Withdrawal, or Non-Consummation.**

The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If the Debtors revoke or withdraws this Plan, or if Confirmation or consummation of this Plan does not occur, then (i) this Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims or any release contemplated hereby), assumption of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, and no acts taken in preparation for consummation of this Plan, shall (A) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other person, (B) prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor, or (C) constitute an admission of any sort by the Debtor or any other person.

### 14.14 **Due Authorization by Claimants.**

Each and every Claimant who elects to participate in the Distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of its Claim against the Debtor, the Distributions provided for in this Plan, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by the Claimant under this Plan.

### 14.15 **Filing of Additional Documentation.**

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### 14.16  Governing Law.

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof.

### 14.17  Successors and Assigns.

The rights, benefits and obligations of any person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such person.

### 14.18  Notices.

Any notice required to be given under this Plan shall be in writing. Any notice that is allowed or required hereunder except for notice of change of address shall be considered complete on the earlier of (a) three (3) days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by facsimile or computer transmission; or (c) three (3) days following the date the notice is sent.

     **(a)**    If to the Debtors, at:
    Waller, Lansden Dortch & Davis, LLP
    Attn: Eric J. Taube
    100 Congress Avenue, 18th Floor
    Austin, Texas 78701

     **(b)**    If to the U.S. Trustee, at:

    United States Trustee
    Western District of Texas, Austin Office
    903 San Jacinto, Room 230
    Austin, Texas 78701

### 14.19 **U.S. Trustee Fees.**

All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date. The Reorganized Debtor shall timely file all post-confirmation reports as required by the U.S. Trustee until this case is closed, converted or dismissed.

### 14.20 **Implementation.**

The Debtors and, after the Effective Date, Reorganized Debtors shall take all steps and execute all documents necessary to implement this Plan including but not limited to appropriate releases, purchase and sale agreements, brokerage contracts, deeds and bills of sale necessary to effectuate the provisions contained in this Plan.

### 14.21 **No admission.**

Neither the filing of this Plan, nor any statement or provision contained herein, nor the taking by the Debtors of any action to enforce and implement this Plan shall be deemed an admission by the Debtors with respect to any matter set forth herein, including, without limitation, liability on any Claim or Equity Interest or the propriety of the classification of any Claim or Equity Interest.

### 14.22 **Conflicts.**

In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

[SIGNATURE PAGE FOLLOWS]

Dated: September 27, 2019

Respectfully submitted,

FFBC REAL ESTATE, LLC

By:___Christine Celis___
Its:___Manager___

FFBC OPERATIONS, LLC

By:___Christine Celis___
Its:___Manager___

Respectfully submitted,

WALLER, LANSDEN, DORTCH & DAVIS, LLP

By:*/s/ Eric J. Taube*
     Eric J. Taube
     State Bar No. 19679350
     Mark C. Taylor
     State Bar No. 19713225
     100 Congress Avenue, 18th Floor
     Austin, Texas 78701
     (512) 472-5997
     (512) 472-5248 (FAX)

ATTORNEYS FOR DEBTORS

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing document was served upon the parties on the attached service list electronically via the Court's ECF system or via first class mail on September 30, 2019.

*/s/ Eric J. Taube*
Eric J. Taube

# LIMITED SERVICE LIST

**Debtors**
FFBC Operations, LLC
FFBC Real Estate, LLC
10001 Metric Blvd.
Austin, TX 78758

**Counsel to Debtors**
Waller Lansden Dortch & Davis
LLP
Attn: Eric J. Taube/Mark C. Taylor
100 Congress Ave., Ste. 1800
Austin, TX 78701

**Governmental Agencies**
Bruce Elfant - Tax Assessor
PO Box 149328
Austin, TX 78714-9328

Internal Revenue Service
Centralized Insolvency Office
P. O. Box 7346
Philadelphia, PA 19101-7346

Texas Workforce Commission
TWC Building-Regulatory
Integrity Div.
101 E. 15th St.
Austin, TX 78778

Texas Alcoholic Beverage
Commission
Licenses and Permits Division
P.O. Box 13127
Austin, TX 78711

Texas Comptroller of Public
Accounts
Revenue Accounting Div.-
Bankruptcy Sec.
P.O. Box 13528 Capitol Station
Austin, TX 78711

Travis County Tax Office
5501 Airport Blvd
Austin, TX 78751

TTB Excise Tax Bureau
P.O. Box 790353
St. Louis, MO 63179 -0353

U.S. Small Business
Administration
Little Rock Commercial Loan Svc
Center
2120 Riverfront Drive, Ste. 100
Little Rock, AR 72202

U.S. Small Business
Administration
Attn: Stephen Bass
615 E. Houston Street, Suite 298
San Antonio, Texas 78205

United States Trustee
903 San Jacinto, Ste. 230
Austin, TX 78701

**Secured Creditors**
Amplify Credit Union
PO Box 81369
Austin, TX 78708

Wells Fargo Corp Trust Services
NW 6441
PO Box 1450
Minneapolis, MN 55485-6441

Celis Phoenix, LLC
4627 Inicio Lane
Austin, TX 78725

Crown Equipment
PO Box 941173
Cincinnati, OH 45264-1173

Navitas Credit Corp.
111 Executive Center Dr.
Ste. 102
Columbia, SC 29210

Pedernales Brewing Company
335 Skyline Dr.
Harper, TX 78631

Wells Fargo Finance
PO Box 29482
Phoenix, AZ 85038

Westrock CP, LLC
P.O. Box 409813
Atlanta, GA 30384

**Consolidated List of
Twenty Largest Unsecured
Creditors**
The Blue River Fox, LLC
Attn: Jeff Ezell
3839 Bee Caves Rd., Ste. 205
Austin, TX 78746

Eventbrite
155 5th St.
San Francisco, CA 94103

Hill Morrison Inc. dba HMI
Construction
5806 Timber Trail
Austin, TX 78731

Berlin Packaging
PO Box 74007164
Chicago, IL 60674-7164

Ampersand
2901 Via Fortuna, Suite 185
Austin, TX 78746

Microstar
2401 15th Street, Suite 200
Denver, CO 80202

Co.Mac. S.r.l.
Via Giuseppe Garibaldi, 34N
24040 Bonate Sotto BG
ITALY

Country Malt Group/Brewcraft
USA
PO Box 51602
Los Angeles, CA 90051-5902

BrauKon
Gewebering 3
83370 Seeon
GERMANY

American Canning
8219 Burleson Road
Suite 300
Austin, TX 78744

Crosby Hop Farm LLC
8648 Crosby Rd NE
Woodburn, OR 97071

Brewers Supply Group (BSG)
P.O. Box 74769
Chicago, IL 60694-4769

Pen & Tell Us
2101 Elton Lane
Austin, TX 78703

Great Western Malting Company
PO Box 1529
Vancouver, WA 98668-1529

Great American Insurance Group
(SK&P Ins)
9600 Great Hills Trail, Suite 170E
Austin, TX 78759-6327

Fruition Construction LLC
3865 NC-16 Business
Denver, NC 28037

Transmarket
P.O. Box 16651
Temple Terrace, FL 33687

James Houchins
P.O. Box 40028
Austin, TX 78704

The Boelter Companies
P.O. Box 8741
Carol Stream, IL 60197-8741

Pak Tech
1680 Irving Road
Eugene, OR 97402

**Notice Parties**
Streusand Landon Ozburn
Lemmon LLP
Attn: Sabrina Streusand/
Rhonda Mates
1801 S. Mopac, # 320
Austin, TX 78746

Hajjar Peters LLP
Attn: Charlie Shelton
3144 Bee Caves Rd.
Austin, TX 78746

Stephen W. Sather
Barron & Newburger, PC
7320 N. Mopac Expy., Ste. 400
Austin, TX 78731

Kimberly A. Walsh
Assistant Attorney General
Bankruptcy & Collections Div.
MC008
P.O. Box 12548
Austin, TX 78711-2548

Stephen Matthew Schultz
The Schultz Law Firm PC
The Penthouse, Suite 104
1212 Guadalupe Street
Austin, TX 78701

Kell C. Mercer
Kell C. Mercer, P.C.
1602 E. Cesar Chavez Street
Austin, TX 78702

Travis County
Attn: Jason A. Starks
Assistant County Attorney
P.O. Box. 1748
Austin, TX 78767

Allen M. DeBard
Langley & Banack Inc.
Trinity Plaza II, Suite 700
745 East Mulberry
San Antonio, Texas 78212-3166

Jonathan L. Gold
Michael Best & Friedrich LLP
The Wharf
1000 Main Avenue SW, Suite 400
Washington, D.C. 20024

Joseph D. Brydges
Michael Best & Friedrich LLP
One South Pickney St., Suite 700
Madison, WI 53703

Alcohol & Tobacco Tax & Trade
Bureau
Daniel Peralta, Senior Counsel
1301 Clay Street, Suite 650N
Oakland, CA 94612

Stephen G. Wilcox
Wilcox Law, PLLC
P.O. Box 201849
Arlington, TX 76006

Steven B. Bass
Assistant US Attorney
903 San Jacinto Blvd., Suite 334
Austin, TX 78701

Pedernales Brewing Company
335 Skyline Dr.
Harper, TX 78631
Via Email: clhereford7@gmail.com

Rebekah Small
Sr. Portfolio Servicing Specialist
Capital CDC
1250 South Capital of Texas Hwy
Bldg. 1, Suite 600
Austin, TX 78746

# EXHIBIT A

<u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED</u>